George McCARTHY et al.

v.

ENVIRONMENTAL TRANSPORTATION SERVICES, INC.

No. 2003–376–M.P.

Supreme Court of Rhode Island.

Jan. 25, 2005.

John J. Flanagan, Middletown, for Plaintiff.

Gregory L. Boyer, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## O P I N I O N

GOLDBERG, Justice.

This case came before the Supreme Court on December 7, 2004, pursuant to a petition for certiorari filed by the petitioners, George and Nancy McCarthy (petitioners), co-administrators of the estate of John M. McCarthy (John or decedent). The petitioners sought review of a decree of the Appellate Division of the Workers' Compensation Court (Appellate Division or panel) that affirmed a decision of the trial court rejecting the decedent's petition for review of a benefits determination made by the respondent, Environmental Transportation Services, Inc. (respondent). The petitioners challenge the Appellate Division's determination that the suspension of benefits under G.L.1956 § 28–35–58 is based on the gross settlement received by an employee from a responsible third party. For the reasons set forth herein, we grant the petition and quash the decree of the Appellate Division.

1. General Laws 1956 § 28–35–58, as amended by P.L. 1985, ch. 186, § 1, provides:

"**Liability of third person for damages.**— Where the injury for which compensation is payable under [The Rhode Island Workers' Compensation Act (WCA)], was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take proceedings, both against that person to recover damages and against any person liable to pay compensation under [the WCA] for that compensation, and the employee shall be entitled to receive both damages and compensation; Provided, That the employee, in recovering damages either by judgment or settlement from the person so liable to pay damages, shall reimburse the person by whom the compensation was paid to the extent of the compensation paid as of the date of the judgment or settlement and the receipt of those damages by the employee shall not bar future compensation; Provided, however, That *an insurer shall be entitled to suspend the payment of compensation benefits payable to the employee when the damages recovered by*

## Facts and Travel

It is uncontested that on September 14, 1988, decedent was injured while working as a truck driver for respondent at a Stop & Shop facility in Massachusetts (Stop & Shop). A memorandum of agreement dated March 13, 1989, sets forth the location of the injury as John's right shoulder, back, and ribs. John's weekly compensation rate was set at $360, plus a $9 dependency benefit. John also sued Stop & Shop for negligence. A jury awarded him $226,495.50 in damages, from which he paid attorney's fees amounting to $73,165, litigation costs of $9,740.80, and $49,034 to satisfy the lien of respondent's workers' compensation insurance provider. As a result of the Stop & Shop judgment, on June 19, 1991, the Workers' Compensation Court decreed that John's weekly compensation benefits be suspended in accordance with § 28–35–58.[1]

On April 14, 1993, the Workers' Compensation Court awarded John specif-

*judgment or settlement from the person so liable to pay damages exceeds the compensation paid as of the date of the judgment or settlement; the suspension paid shall be that number of weeks which are equal to the excess damages paid divided by the employee's weekly compensation rate;* however, during the period of suspension the employee shall be entitled to receive the benefit of all medical and hospital payments on his behalf; and if the employee has been paid compensation under [the WCA], the person by whom the compensation was paid shall be entitled to indemnity from the person so liable to pay damages as aforesaid, and to the extent of that indemnity shall be subrogated to the rights of the employee to recover damages therefor; Provided, however, That when money has been recovered either by judgment or by settlement by an employee from the person so liable to pay damages as aforesaid, by suit or settlement, and the employee is required to reimburse the person by whom the compensation was paid, the employee or his attorney shall be entitled to withhold from the amount to be reimbursed that proportion of the costs,

ic compensation amounting to $7,300.80 for a 26 percent loss of use of his right arm. The respondent appealed to the Appellate Division, which found that an employee may not receive specific compensation benefits while weekly compensation benefits are suspended in accordance with § 28–35–58. Because John already had been paid the specific compensation award, the Appellate Division ordered that the amount of the award be added to the excess proceeds of his recovery from Stop & Shop for purposes of expanding the benefits suspension period.[2] This ruling is not before us.

On March 29, 2000, John filed a petition with the Workers' Compensation Court seeking termination of the suspension period and resumption of his weekly compensation benefits. John asserted that, under a proper interpretation of § 28–35–58, the suspension period should have been calculated based on his net recovery, after payment of attorney's fees and costs, and not on his gross recovery. The court denied and dismissed his petition, finding that § 28–35–58 requires that the period of suspension of weekly compensation benefits after an employee's recovery from a responsible third party is based on the employee's gross recovery.

John filed a timely claim of appeal but died on February 2, 2003, before the Appellate Division heard his appeal. The petitioners were substituted as proper parties.

On appeal to the Appellate Division, petitioners argued that this Court's decision in *Rison v. Air Filter Systems, Inc.*, 707 A.2d 675 (R.I.1998), allows for the use of an employee's net recovery when calculating the period of suspension. Further, petitioners asserted that calculating suspension periods based upon the gross amount of compensatory damages works a hardship on injured employees that was not intended by the Legislature. The Appellate Division denied and dismissed petitioners' appeal, concluding that the Legislature did not intend for suspension periods to be based on net recovery because it did not specifically provide for the deduction of attorney's fees and litigation costs. We granted certiorari to review this holding.

### Standard of Review

This petition raises an issue of statutory construction, which this Court reviews *de novo* for any error of law or equity. *Star Enterprises v. DelBarone*, 746 A.2d 692, 695 (R.I.2000) (citing *Rison*, 707 A.2d at 678 and § 28–35–30(a)(3)). On certiorari, our review of the record "is limited to examining the record to determine if an error of law has been committed." *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I.1994).

### Discussion

In this case we are called upon to interpret the meaning of "excess damages" as that term is used in the formula

witness expenses, and other out-of-pocket expenses and attorney fees which the amount which the employee is required to reimburse the person by whom compensation was paid bears to the amount recovered from the third party." (Emphasis added.)

2. We addressed this issue in *Rison v. Air Filter Systems, Inc.*, 707 A.2d 675 (R.I.1998).

When an injured employee whose benefits are suspended pursuant to § 28–35–58 is awarded specific compensation, the employer or insurer is to reduce the suspension period in lieu of paying the award. *Id.* at 685. In this case, as the Appellate Division determined, a reduction of the suspension period would have been inappropriate because the result would have been a double recovery.

set forth in § 28–35–58 for determining the number of weeks an injured employee's weekly compensation benefits should be suspended to account for damages recovered from a responsible third party. The respondent asserts that, under a proper interpretation of § 28–35–58, an employee's excess damages are all the money recovered in excess of the workers' compensation lien. The petitioners contend that the formula must refer to net recovery, after additional deductions for the attorney fees and litigation costs. They argue that using an employee's gross recovery to calculate the suspension period contravenes the policy underlying the Rhode Island Workers' Compensation Act (WCA or act) that injured workers may recover damages from third parties without surrendering their rights to workers' compensation benefits in the event of a deficient tort recovery.

 It is an oft-cited proposition of statutory construction that, when faced with statutory language that is clear and unambiguous, "this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Oliveira v. Lombardi*, 794 A.2d 453, 457 (R.I.2002) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). " 'If statutory provisions appear unclear or ambiguous, however, we shall examine the entire statute to ascertain the intent and purpose of the Legisla-

ture.' " *Jeff Anthony Properties v. Zoning Board of Review of North Providence*, 853 A.2d 1226, 1230 (R.I.2004). Such an inquiry requires us to " 'determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes.' " *Oliveira*, 794 A.2d at 457. Further, "[i]t is a well-known maxim of statutory interpretation that this Court 'will not construe a statute to reach an absurd [or unintended] result.' " *America Condominium Association, Inc. v. IDC, Inc.*, 844 A.2d 117, 127 (R.I.2004) (quoting *In re Estate of Gervais*, 770 A.2d 877, 880 (R.I.2001)).

This Court had occasion to examine § 28–35–58 in *Rison* and signaled our concern about the application of the statute: "we express no opinion on whether the figure representing 'the excess damages paid' should reflect a deduction from the gross settlement amount for the employee's attorneys' fees and other litigation expenses." *Rison*, 707 A.2d at 680 n. 5 (quoting § 28–35–58).[3] The General Assembly has not taken steps to clarify the meaning of "excess damages," and we are compelled to construe the language at this time.

Although it is not specifically articulated in the statute, the parties agree that the amount of the workers' compensation lien must be deducted from the tort recovery to arrive at the excess damages calculation.[4] The disputed issue is whether the

---

**3.** In *Rison*, the amount of petitioner's tort recovery was estimated to be $2.5 million. *Rison*, 707 A.2d at 677. The resulting benefits suspension period, therefore, was approxi-

mately 175 years, obviating the need for this Court to determine exactly when benefits payments should recommence. *Id.* at 680 n. 5.

**4.** The petitioners' and respondent's versions of the suspension calculation are as follows:

| | Petitioners | Respondent | |
|---|---|---|---|
| | $ 226,495.50 | $ 226,495.50 | (Stop & Shop judgment) |
| | − $ 49,034.00 | − $ 49,034.00 | (workers' compensation lien) |
| | − $ 73,165.00 | | (attorney's fees) |
| | − $ 9,740.80 | | (litigation costs) |
| | $ 87,555.70 | $ 177,461.50 | (excess damages) |

attorney's fees and costs associated with the underlying action also should be deducted. The statutory language under review provides that "the suspension *paid* shall be that number of weeks which are equal to the excess damages *paid* divided by the employee's weekly compensation rate." Section 28–35–58. (Emphases added.) It is reasonable to look to the statutory language providing for reimbursement of the lien: "the employee or his [or her] attorney shall be entitled to withhold from the amount to be reimbursed that proportion of the costs, witness expenses, and other out-of-pocket expenses and attorney fees which the amount which the employee is required to reimburse the person by whom compensation was *paid* bears to the amount recovered from the third party." *Id.* (Emphasis added.) It is clear from this provision that the employer or insurer is not entitled to reap the benefit of the employee's recovery without bearing its share of the cost.

Furthermore, an attempt to reconcile the use of the word "paid" in "suspension paid" with that in "excess damages paid" and "person by whom compensation was paid" gives rise to an ambiguity. In the latter two instances, "paid" clearly refers to the employee's receipt of money, but such usage is meaningless in the context of a suspension of benefits.[5] We, therefore, must construe the statute in light of this ambiguity.

In an attempt to justify the harsh result its interpretation of § 28–35–58 would work upon injured workers like decedent, the respondent urges us to consider that, before the 1985 amendment, injured workers were forced to choose between workers' compensation benefits and tort damages. *See Travis v. Rialto Furniture Co.*, 101 R.I. 45, 49, 220 A.2d 179, 181 (1966) (holding an employee who recovers tort damages from a negligent third party presumptively is made whole by that recovery). We do not agree that respondent's all or nothing argument is helpful to our analysis. The 1985 amendment addresses dual concerns: that responsible tortfeasors should bear their share of liability for employees' on-the-job injuries; but that injured employees should not receive a windfall by recovering damages and workers' compensation benefits. *Rison*, 707 A.2d at 683–84. This amendment did not change the WCA's foundational premise that employers stand as "a vanguard for the employee's welfare," ready to accept no-fault liability at preset limits for on-the-job injuries. *Id.* at 684.

| + $ | 7,300.80 | + $ | 7,300.80 | (specific compensation award) |
|---|---|---|---|---|
| $ | 94,856.50 | | $ 184,762.30 | |
| ÷ $ | 369.00 | ÷ $ | 369.00 | (weekly compensation rate) |
| | 257 | | 500 | (approximate weeks of suspension) |
| | 5 | | 9.6 | (approximate years of suspension) |

The amounts of the judgment, lien, attorney's fees, and litigation costs are as represented in the joint stipulation of facts. The amount of excess damages as argued by petitioners ($87,555.70) also appears in the joint stipulations and is included here, despite the apparent mathematical error. In addition, in its brief, respondent failed to account for the $9 dependency benefit and the specific compensation award.

As discussed, a specific compensation award would not ordinarily factor into the suspension calculation. *See* note 2, *supra.*

5. In oral argument, the respondent acknowledged that the meaning of the word "paid," as used in the phrase "suspension paid," is unclear.

As this Court observed in the *DeNardo* case:

> "Our compensation act has been described as social legislation which is remedial in nature. *Perron v. ITT Wire & Cable Div.*, 103 R.I. 336, 343, 237 A.2d 555, 559 (1968). One of the basic purposes of the Act is to afford a degree of economic relief and rehabilitation to those who are casualties of our industrial world by making compensation payments part of the cost of production. * * * The employer has the burden of caring for the casualties occurring in his employment, thus preventing an injured employee from being a public charge. * * * This [C]ourt has long recognized that the Act's provisions must be given a liberal construction with an eye toward effectuating their evident humanitarian purpose. *Roy v. Providence Metalizing Co.*, 119 R.I. 630, 637, 381 A.2d 1051, 1054 (1978)." *DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 451–52, 399 A.2d 1229, 1235–36 (1979) (Kelleher, J., concurring).

We will not interpret § 28–35–58's suspension formula in such a way that an employee is forced to accept a lesser total benefit because he endeavored to allocate liability to a culpable party. We decline to attribute to the Legislature the intent to permit an employee to pursue a tort remedy without risking his or her right to compensation with one hand, only to diminish that compensation with the other. Just as an injured worker should not receive a windfall from double recovery of tort damages and compensation benefits, neither should the employer be relieved of paying compensation for a period during which the employee receives no benefit. A suspension period that is calculated based on a "recovery" the injured worker does not receive would effectuate an absurd and, indeed, unjust outcome.

Although the Appellate Division noted the harsh result worked by its decision, it concluded that it had no choice but to apply a strict reading of the statute. The panel was persuaded by the fact that the Legislature demonstrated its intent to exclude attorney's fees and litigation expenses from the reimbursement provision, yet did not explicitly exempt them in the suspension formula. We respectfully disagree. Although the General Assembly did not explicitly provide for the subtraction of litigation costs and attorney's fees in the suspension formula, to apply the suspension formula to the gross recovery figure would be to give the statute a construction that is contrary to the WCA's purpose and would yield an unjust result. *See Rison*, 707 A.2d at 682 ("no construction, particularly of a remedial statute, should be adopted[,] which would defeat its evident purpose") (quoting *Coletta v. State*, 106 R.I. 764, 770, 263 A.2d 681, 684 (1970)).

In *Rison*, 707 A.2d at 685, this Court held that when an injured employee whose weekly compensation benefits have been suspended in accordance with § 28–35–58 obtains a specific compensation award, the proper mechanism for satisfying the award is to reduce the suspension period. Although we recited the maxim *inclusio unius est exclusio alterius*[6] to explain the inclusion of specific compensation awards in the definition of compensation benefits under § 28–35–58, the result is also justified on policy grounds. *Rison*, 707 A.2d at 681–82. If an employee were permitted to collect weekly compensation benefits, tort damages, and specific compensation awards, he or she would receive a windfall

---

**6.** This principle of statutory construction may be stated as: the inclusion of one is the exclusion of the other.

that was not intended by the Legislature. *Id.* at 682.

Likewise, we are of the opinion that § 28–35–58 should not operate to bestow a windfall on employers or their insurers. In *Rison*, this Court said that:

> "[The employer], in its role as the no-fault-liability vanguard, is made whole for any workers' compensation expenditures it may have been required to advance to [the employee]. And for his part, [the employee] is guaranteed financial support during the period of his work incapacity—however long that may prove to be—but *[the employee] is not allowed to retain any excess-settlement proceeds unless and until [the employer] and/or its insurer have first been made whole.*" *Rison*, 707 A.2d at 685. (Emphasis added.)

A suspension formula that disallows a deduction for attorney's fees and costs paid by the employee in connection with the underlying litigation would result in the employer (or its insurer) benefiting beyond being made whole, at the expense of the injured employee.

We are mindful that the Legislature recently amended § 28–35–58 to permit an employer or insurer to step into the shoes of an injured employee if that employee "neglects to exercise the employee's right of action by failing to file a lawsuit against [a responsible] third person within two (2) years and eight (8) months after the injury." [7] P.L. 2002, ch. 280, § 4 (§ 28–35–58(b)). In such cases, the employer or insurer is fully responsible for payment of the attorney's fees and court costs associated with the litigation and, after such expenses have been paid, "[any damages in] excess of the amount of the lien * * * shall be paid to the injured employee." [8] *Id.* (§ 28–35–58(c)). We fail to see why employers and insurance companies should not bear their share of the cost of litigation when an employee seeks to enforce his or her own right to compensatory damages.

■ "[G]iven the WCA's remedial nature, any ambiguities * * * generally 'must be construed liberally in favor of the employee.'" *Rison*, 707 A.2d at 681 (quoting *Coletta*, 106 R.I. at 772, 263 A.2d at 685). Accordingly, after considering the policies that underlie the WCA, we conclude that "excess damages," for purposes of calculating benefits suspension periods under § 28–35–58, means that amount of damages actually received by the injured employee, after reasonable attorney's fees and litigation costs have been paid.

## Conclusion

For the reasons stated herein, we quash the decree of the Appellate Division and

---

7. Section 28–35–58(b), as amended by P.L. 2002, ch. 280, § 4, provides, in pertinent part:

 "**28–35–58. Liability of third person for damages.—**
 " * * *

 "(b) In any case in which the employee or, in case of death, the administrator of the employee's estate neglects to exercise the employee's right of action by failing to file a lawsuit against such third person within two (2) years and eight (8) months after the injury, the self-insured employer or the employer's insurance carrier may so proceed and shall be subrogated to the rights of the injured employee * * *."

8. Section 28–35–58(c), as amended by P.L. 2002, ch. 280, § 4, provides, in pertinent part:

 "**28–35–58. Liability of third person for damages.—**
 " * * *

 "(c) If the self-insured employer or the employer's insurance carrier recovers from [third person(s) ] other personal damages or benefits, after expenses and costs of action have been paid, in excess of the amount of the lien as defined in this section, then that excess shall be paid to the injured employee or, in the case of death, to the administrator of the employee's estate for distribution."

direct that the suspension formula be recalculated in accordance with our holding. The record is remanded to the Workers' Compensation Court with our decision endorsed thereon.