**Supreme Court**

No. 2014-270-M.P.

Patrizia Prew                    :

            v.                    :

Employee Retirement System of the    :
      City of Providence.


NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Patrizia Prew                              :

v.                              :

Employee Retirement System of the      :
    City of Providence.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  The petitioner, Patrizia Prew (Prew), filed a petition

for a writ of certiorari seeking review of a decision by the City of Providence (city) Retirement

Board (board) that denied her application for accidental-disability retirement.  This Court granted

the petition, and this case came before the Supreme Court for oral argument on March 2, 2016,

pursuant to an order directing the parties to appear and show cause why the issues raised in this

appeal should not be summarily decided.  Having carefully considered the memoranda submitted

by the parties and the arguments of counsel, we are satisfied that cause has not been shown, and

the appeal may be decided at this time.  We quash the decision of the board.

**Facts and Travel**

On March 5, 2013, Prew, who held the rank of detective after more than fifteen years of

service in the Providence Police Department, injured her right hand and wrist as she attempted to

detain a juvenile following a disturbance outside his school.  Thereafter, her status was "injured

on duty," and she was diagnosed with post-traumatic carpal tunnel syndrome.  Her physician

recommended surgery, but, due to a fear of surgical complications, Prew opted against surgery and elected treatment with nonsurgical measures.

In August 2013, Prew underwent a series of tests to determine whether her injury interfered with her ability to handle a firearm. It did. The Providence Police Department concluded that Prew no longer could operate a firearm safely and took possession of her service weapon. Later that month, on August 23, Prew applied to the board for accidental-disability retirement.

In accordance with the applicable ordinance, Prew was evaluated by three independent medical examiners (IMEs) who were retained by the board. In letters mailed from the city's human resources department, they were asked to determine whether Prew had a disability and if so, whether the disability was "caused by an accident while on the performance of * * * her duty." The letters further requested that, should the IMEs deem Prew to have a work-related disability, the IMEs submit "a statement as to whether [Prew] can perform the duties of * * * her job. If not, a statement as to what work [Prew] can perform." The IMEs also were asked for "[a] statement concerning prognosis, the necessity of further treatment, and expectation of return to work."

All three IMEs diagnosed Prew with right carpal tunnel syndrome, which each found to be causally related to her on-the-job injury. The records reflect that, during their examinations, each IME informed Prew about the benefits of surgical release of the carpal tunnel, but Prew declined this course of treatment. Michael P. Bradley, M.D., concluded that, although he could not "guarantee" improvement, surgery is the best course of treatment and, without it, Prew is "rendered * * * completely disabled" and unable to work. Philip J. Reilly, M.D., reported to the city that Prew will be unable to perform her duties as a detective "so long as she elects to

- 2 -

proceed on a conservative path and avoid surgery." Manuel F. DaSilva, M.D., determined that Prew "is currently partially disabled, unable to perform her full[-]duty job requirements."[1] He further opined that:

> "It is well proven that carpal tunnel release done by a certified hand surgeon has a 90% to 95% success rate with improvement even if not complete improvement of the symptoms. This means that the vast majority of people are able to go back to their occupation. * * * I find it very difficult for me to agree that [Prew] is unable to do her job due to the fact that she has one of the most treatable ailments that we see in the hand."

On July 23, 2014, the board voted to deny Prew's application for accidental-disability retirement. In its written decision, issued on August 14, 2014, the board stated:

> "The evidence provided does not establish that Prew is incapacitated for the performance of her job duties if she elects not to have surgery to release the carpal tunnel of her right wrist. Prew, who would otherwise be found permanently disabled, failed without justifiable cause to follow the treatment prescribed by her treating physician.
>
> "* * * The record * * * indicates that Prew's condition is easily correctable with a surgical release of the carpal tunnel and, by virtue of her 'failure' to follow prescribed treatment, she cannot be found disabled. As a result, the [b]oard denies Prew's [a]pplication due to her failure to follow prescribed medical treatment and her failure to mitigate an injury resulting in a permanent disability."

Prew filed a petition for a writ of certiorari on October 6, 2014, which was granted by this Court on June 8, 2015.

---

[1] During an executive session of the board's medical subcommittee meeting on April 23, 2014, the board's medical advisor, Guy Geffroy, M.D., who had reviewed Prew's application materials, clarified to the subcommittee that, in this context, the term "partially disabled" means that "[Prew] would be able to do some type of sedentary work but it's not * * * compatible with working as a police officer."

**Standard of Review**

"This Court reviews decisions of the board by a writ of certiorari." Pierce v. Providence Retirement Board, 15 A.3d 957, 961 (R.I. 2011). Considering questions of law de novo, this Court's duty is to scrutinize the record to determine whether the board's decision is supported by "any legally competent evidence" and whether reversible errors of law were made. Id. (quoting Sobanski v. Providence Employees' Retirement Board, 981 A.2d 1021, 1022 (R.I. 2009) (mem.)). A decision of the board must be quashed if it is not supported by "competent facts" or if it contains legal errors so egregious that they "infect[] the validity of the proceedings." Id. (quoting Cullen v. Town Council of Lincoln, 850 A.2d 900, 903 (R.I. 2004)).

"[F]rom a medical point of view[,] the advisability of [an] operation presents a question of fact, [but] the issue of whether an employee can be forced to undergo * * * an operation is a question of law." Guilmette v. Humble Oil & Refining Co., 114 R.I. 508, 511, 336 A.2d 553, 554 (1975) (appeal from a decree of the then-Workmen's Compensation Commission) (citing Mancini v. Superior Court, 78 R.I. 373, 380-81, 82 A.2d 390, 393-94 (1951) (workers' compensation case)).

**Analysis**

While this Court previously has been called upon to examine eligibility requirements for Providence city employees seeking accidental-disability retirement, this case presents a novel issue for our review: Does the Providence Code of Ordinances (Providence Code) require an otherwise eligible employee to mitigate her injury by undergoing a surgical procedure in order to qualify for an accidental-disability pension? We hold that it does not.

Accidental-disability retirement is one of the three retirement schemes encompassed within the City of Providence Retirement System (retirement system). See Providence Code of

Ordinances, Supp. No. 1, § 17-189 (June 13, 2016) (Supp. No. 1); see also Pierce, 15 A.3d at 961. The other two schemes are known as service retirement and ordinary-disability retirement. Section 17-189(a), (d). Service retirement is available to employees[2] based on their age and length of service. Section 17-189(a). Employees who became disabled as a result of an injury that was suffered in the line of duty are eligible for accidental-disability retirement, § 17-189(f), and ordinary-disability retirement is available to all other participating employees who can no longer work due to disability, § 17-189(d).

Section 17-189(f) of the Providence Code governs eligibility requirements for employees in pursuit of an accidental-disability pension.[3] This Court recently had the occasion to review a

---

[2] While not all employees participate in the retirement system, see Providence Code of Ordinances, Supp. No. 1, §§ 17-181.3, 17-187(a) (June 13, 2016), for the sake of simplicity, in this opinion, we shall refer to all members of the retirement system as "employees."

[3] We pause to express our concern that the decision issued by the board on August 14, 2014 quoted from an obsolete version of the accidental-disability-retirement ordinance. The board quoted language from a version that had not been in effect for nearly eight months. See Providence Code, Supp. No. 83, § 17-192(f) (Mar. 18, 2014) (Supp. No. 83) (version in effect on the date of the decision); Providence Code, Supp. No. 81, § 17-189(5) (June 29, 2013) (Supp. No. 81) (version quoted by the board, even though the language was updated on December 20, 2013 by supplement 82 to the Providence Code). In addition to quoting outdated language, the board incorrectly cited to § 17-189(6) rather than to § 17-192(f), the subsection in effect at the time of the decision. While the differences between the erroneously cited language and the actual law at the time the board issued its decision are not substantive for the purposes of this case, these errors are troubling.

We further are mystified by the pendulum-like nature of the placement of the accidental-disability-retirement ordinance within the Providence Code. Multiple changes to Chapter 17 of the Providence Code over the past three years have rendered the ordinance a moving target, bouncing throughout the chapter in such a manner that only those highly experienced in complex legal research can accurately determine where in the Providence Code the ordinance lies at any given point in time. See, e.g., Supp. No. 1, § 17-189(f) (listing accidental-disability-retirement ordinance at § 17-189(f)); Providence Code, Republication, § 17-192(f) (Oct. 21, 2015) (listing ordinance at § 17-192(f)); Providence, R.I., An Ordinance in Amendment of Chapter 17, Article VI of the Code of Ordinances, Entitled "Retirement System" Regarding Pension Matters Related to Certain Members of the Retirement System, ch. 2015-50, § 17-189(6) (Sep. 17, 2015) (Ordinance 2015-50) (listing ordinance at § 17-189(6)); Providence Code, Supp. No. 82, § 17-192(f) (Dec. 20, 2013) (listing ordinance at § 17-192(f)); Providence, R.I., An Ordinance in

previous version of § 17-189(f) in <u>Morse v. Employees Retirement System of Providence</u>, No. 2013-252-M.P., slip op. at 11 (R.I., filed June 6, 2016),[4] and, in so doing, concluded that "the ordinance is not well drafted and is certainly not clear and unambiguous." This determination governs our analysis in this case.

We interpret an ordinance in the same manner in which we interpret a statute. <u>Pierce</u>, 15 A.3d at 963 (noting that the rules of construction applied to statutes also apply to ordinances). If its language is "clear and unambiguous," this Court must apply its "plain and ordinary meaning" and abstain from judicial construction. <u>Id.</u> (quoting <u>Murphy v. Zoning Board of Review of South Kingstown</u>, 959 A.2d 535, 541 (R.I. 2008)). However, when we are confronted with unclear or ambiguous language, as we are here, we "examine the entire statute to ascertain the intent and purpose of the Legislature." <u>Trant v. Lucent Technologies</u>, 896 A.2d 710, 712 (R.I. 2006) (quoting <u>Jeff Anthony Properties v. Zoning Board of Review of North Providence</u>, 853 A.2d 1226, 1230 (R.I. 2004)). In so doing, this Court "consider[s] the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if

Amendment of Chapter 17, Article VI of the Code of Ordinances, Entitled: "Retirement System" Regarding Pension Matters Related to Members of Local 799 and Providence Lodge No. 3, F.O.P., and Certain Retirees of Local 799 and Providence Lodge No. 3, F.O.P., ch. 2013-35, § 17-189(6) (July 31, 2013) (listing ordinance at § 17-189(6)); Supp. No. 81, § 17-189(5) (Dec. 6, 2012) (listing ordinance at § 17-189(5)). This Court and the general public living and doing business in Providence should not be compelled to engage in statutory gymnastics in order to determine the correct placement of an ordinance within the Providence Code. The multiple changes pose a quagmire of nightmarish proportions.

[4] On June 6, 2016, when this Court issued its decision in <u>Morse v. Employees Retirement System of Providence</u>, No. 2013-252-M.P. (R.I., filed June 6, 2016), the accidental-disability-retirement ordinance was codified at § 17-189(6). <u>See</u> Ordinance 2015-50. One week later, the city issued Supplement 1 to the Providence Code, which listed the accidental-disability-retirement ordinance at § 17-189(f). <u>See</u> Supp. No. 1, § 17-189(f). Despite all of the changes to the placement of the accidental-disability-retirement ordinance within the Providence Code over the past three years, there have been no amendments to its language, save for changes to punctuation, since December 20, 2013.

each section were independent of all other sections." In re Brown, 903 A.2d 147, 149 (R.I. 2006) (quoting Sorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I. 1994)).

"[O]ur interpretation of an ambiguous statute 'is grounded in policy considerations[,] and we will not apply a statute in a manner that will defeat its underlying purpose." Hough v. McKiernan, 108 A.3d 1030, 1035 (R.I. 2015) (quoting Town of Burrillville v. Pascoag Apartment Associates, LLC, 950 A.2d 435, 446 (R.I. 2008)). Accordingly, this Court generally will refrain from "read[ing] into a statute a requirement that the drafters omitted," Commerce Park Associates 1, LLC v. Houle, 87 A.3d 1061, 1067 (R.I. 2014), and will do so only if "the clear purpose of the legislation would fail without the implication," Wehr, Inc. v. Truex, 700 A.2d 1085, 1088 (R.I. 1997) (quoting State v. Feng, 421 A.2d 1258, 1264 (R.I. 1980)).

In interpreting the language of a statute, we apply the presumptions of statutory construction. We presume that the drafters "intended each word or provision of a statute to express a significant meaning, and the [C]ourt will give effect to every word, clause, or sentence, whenever possible." State v. Clark, 974 A.2d 558, 571 (R.I. 2009) (quoting State v. Bryant, 670 A.2d 776, 779 (R.I. 1996)). "The Legislature is presumed to know the state of existing relevant law when it enacts a statute." State v. Briggs, 934 A.2d 811, 814 (R.I. 2007).

With this in mind, we turn to § 17-189(f), which provides, in relevant part:

> "Notwithstanding any other ordinance, prior collective bargaining agreement, or prior interest arbitration award to the contrary, medical examination of a member for accidental disability and investigation of all statements and certifications by said member or in [sic] his or her behalf in connection therewith shall be made upon the application of the head of the department in which such member is employed, or upon the application of the member, or of a person acting in [sic] his or her behalf, stating that such member is physically or mentally incapacitated for, the performance of the duties the member was performing at the time of the accident, as a natural and proximate result of an accident while in the performance of duty, and certifying the definite time, place and

conditions of such duty performed by said member resulting in such alleged disability and that such alleged disability is not the result of willful negligence or misconduct on the part of said member and is not the result of age or length of service and that said member should, therefore, be retired. If a medical examination conducted by three (3) physicians certified in the field reasonably related to the member's alleged injury engaged by the director of personnel and such investigation as the director of personnel may desire to make shall show that said member is physically or mentally incapacitated for the performance of service any [sic] as a natural and proximate result of an accident, while in the performance of duty, and that such disability is not the result of willful negligence or misconduct on the part of said member and is not the result of age or length of service, and that such member should be retired, and the physicians who conducted the examination shall so certify to the retirement board stating the time, place and conditions of such service performed by said member resulting in such disability, the retirement board shall retire the said member for accidental disability. The application to accomplish such retirement must be filed within eighteen (18) months of the date of the accident, unless a waiver is granted through a resolution approved by a majority of the city council."

Section 17-189(f) is situated within Article VI of Chapter 17 of the Providence Code, which addresses the Providence retirement system. The stated purpose of Article VI is

"to preserve the health, safety[,] and welfare of the citizens of Providence and their property and to ensure the sustainability of the employee retirement system of the [C]ity of Providence for current and retired employees by promoting the sustainability and longevity of the employees' retirement system of the City of Providence." Section 17-181.1.[5]

The legislative findings made in connection with the enactment of Article VI echo these goals and detail the city's multiple fiscal challenges, § 17-181.2, including the recognition that its "pension system is severely underfunded," § 17-181.2(2).[6]

---

[5] Nearly identical language was in effect on August 14, 2014, the date the board issued its decision in this case. See Supp. No. 83, § 17-181.

[6] Despite some minor changes to grammar and punctuation, the language in effect at the time of the board's decision is substantively the same. See Supp. No. 83, § 17-182.

Within Article VI, the accidental-disability-retirement ordinance is located in § 17-189, which outlines the three types of retirement schemes available to city employees. See Pierce, 15 A.3d at 961. Each scheme determines the amount of the pension to which employees are entitled, and the retirement system confers the most generous benefits upon employees who become disabled while in the performance of their duties. Id. (citing a previous version of § 17-189(f)). Eligibility requirements for employees who seek accidental-disability retirement also are more rigorous than those that must be satisfied by employees who seek to retire on the basis of age and length of service or a disability not causally related to an on-the-job injury. Id. at 962. The hierarchy of the retirement schemes, with accidental-disability retirement bestowing the most benefits yet requiring the most stringent qualifications for eligibility, demonstrates that this ordinance is intended to redress the harm suffered by employees who become permanently disabled as a result of performing their job duties. It is remedial in nature. See Esposito v. O'Hair, 886 A.2d 1197, 1203 (R.I. 2005) ("In the parlance of statutory construction, a remedial statute is 'one which affords a remedy, or improves or facilitates remedies already existing for the enforcement [of] rights [or] redress of wrongs * * *.'" (quoting Ayers-Schaffner v. Solomon, 461 A.2d 396, 399 (R.I. 1983), recognized as superseded on other grounds by statute in Lake v. State, 507 A.2d 1349, 1352 (R.I. 1986))); see also Criminal Injuries Compensation Board v. Gould, 331 A.2d 55, 70 (Md. 1975) ("[D]isability pension laws are by nature 'remedial legislation * * *.'" (quoting Saxton v. Board of Trustees of the Fire and Police Employees Retirement System of Baltimore, 296 A.2d 367, 369 (Md. 1972))); Morrison v. Department of Retirement Systems, 835 P.2d 1044, 1048 (Wash. Ct. App. 1992) (describing remedial nature of disability-pension statutes).

This Court interprets a remedial statute liberally. Asadoorian v. Warwick School Committee, 691 A.2d 573, 580 (R.I. 1997). We will not construe a remedial statute in a manner that would "defeat its evident purpose." McCarthy v. Environmental Transportation Services, Inc., 865 A.2d 1056, 1062 (R.I. 2005) (quoting Rison v. Air Filter Systems, Inc., 707 A.2d 675, 682 (R.I. 1998). As a remedial measure intended to compensate employees who become disabled as the result of an injury suffered in the line of duty, "any ambiguities * * * 'must be construed liberally in favor of the employee.'" Id. at 1063 (quoting Rison, 707 A.2d at 681).

We return to the language of § 17-189(f). This Court previously has determined that the clause, "the retirement board shall retire the said member for accidental disability," § 17-189(f) (emphasis added), is of a "mandatory, not discretionary" nature. Connelly v. City of Providence Retirement Board, 601 A.2d 498, 500 (R.I. 1992) (construing identical language contained within "An Act to Provide for the Retirement of Employees of the City of Providence," P.L. 1923, ch. 489, § 9(5)), which was "the state retirement act in existence before the city created its own retirement system pursuant to its home rule charter," Arena v. City of Providence, 919 A.2d 379, 393 (R.I. 2007)); see id. ("[T]he word 'shall' usually connotes the imperative and contemplates the imposition of a duty, unless the particular context and plan require a contrary meaning." (quoting Brown v. Amaral, 460 A.2d 7, 10 (R.I. 1983))). Consequently, this Court has declared that, once the employee has established that he or she qualifies for accidental-disability retirement, the board is not vested with discretion to deny the application. Id.

A close reading of § 17-189(f) outlines all that is required for an employee to establish qualification for accidental-disability retirement. First, an application for accidental-disability retirement must be submitted by the employee or on the employee's behalf within eighteen months of the accident or upon a waiver granted by the city council. Section 17-189(f). The

- 10 -

application must allege that the employee is eligible for accidental-disability retirement, and it is incumbent upon the city to conduct an "investigation of all statements and certifications" made by the employee or on his or her behalf. Id. The employee must submit to medical examinations by three independent medical examiners selected and retained by the city. Id. The examinations, along with any additional investigation undertaken by the city's director of personnel, must establish the following: (1) the employee "is physically or mentally incapacitated for the performance of service any [sic]";[7] (2) that the incapacitation is "a natural and proximate result of an accident" or accidents;[8] (3) such accident or accidents occurred "while [the employee was] in the performance of duty"; (4) the disability was not caused by the employee's willful negligence or misconduct; (5) the disability "is not the result of age or length of service"; (6) the employee "should be retired"; and (7) the definite time, place, and conditions of the duty that resulted in the employee's disability. Id.; see also Pierce, 15 A.3d at 962 (discussing requirements of a previous version of § 17-189(f)). There is no language in the ordinance that indicates that an employee must undergo surgery to mitigate his or her permanent disability in order to qualify for accidental-disability retirement. The absence of such a requirement must be construed in favor of the employee. See McCarthy, 865 A.2d at 1063.

---

[7] It appears that the placement of the word "any" is a typographical error. Since the meaning of the phrase "performance of service any" is not relevant to the issues raised in this case, we shall not endeavor to determine the intent of the drafters. Cf. City of Cranston v. Rhode Island Laborers' District Council, Local 1033, 960 A.2d 529, 533 (R.I. 2008) (declaring that this Court "generally refrain[s] from addressing issues that the case at hand does not require [it] to address" (quoting State v. Lead Industries Association, Inc., 951 A.2d 428, 470 (R.I. 2008))). However, we are cognizant that the apparent error reflects a lack of careful proofreading not only in 2013, when the error first appeared, but also in the subsequent amendments to Chapter 17.

[8] See Pierce v. Providence Retirement Board, 15 A.3d 957, 966 (R.I. 2011) ("hold[ing] that the board erroneously limited the phrase 'of an accident' to mean one and only one accident" (citing a previous version of § 17-189(f))).

We also do not perceive a mitigation requirement when considering Article VI in its entirety. Surely, Article VI's stated purpose is to limit the city's already grave fiscal challenges, and the legislative findings accompanying Article VI elucidate the reason behind this goal. See §§ 17-181.1, 17-181.2. However, in articulating their goal to protect the city's fiscal stability, the drafters did not dismantle the city's long-standing accidental-disability-retirement scheme. Nor did the drafters impose a mitigation requirement within the language of § 17-189(f), as is contained within a similar remedial statutory scheme, the Rhode Island Workers' Compensation Act. See G.L. 1956 § 28-33-6, as amended by P.L. 1954, ch. 3297, § 1 ("[T]he refusal of the employee to accept treatment reasonably required to lessen or terminate his or her incapacity shall bar the employee from receiving compensation during the period of refusal.").[9]

Despite the absence of an express mitigation requirement within § 17-189(f), the city argues that such a requirement must be read into the ordinance in order to protect "the integrity of the retirement system."[10] The city contends that an employee who, like Prew, refuses to

---

[9] Although not raised by the city or argued to this Court, we are satisfied that our opinion in Mancini v. Superior Court, 78 R.I. 373, 375, 380, 82 A.2d 390, 391, 393 (1951), which examined an employee's refusal to undergo surgery within the context of the Workmen's Compensation Act, G.L. 1938, chapter 300, does not apply to this case. Since Prew is a police detective, the circumstances of this case are not controlled by the Workers' Compensation Act, G.L. 1956 chapters 29-37 of title 28, the successor to the Workmen's Compensation Act, but rather the comprehensive ameliorative statutory scheme regarding police officers and fire fighters injured on duty, as set forth in G.L. 1956 § 45-19-1, the state's injured-on-duty statute. Notwithstanding our opinion in Mancini and its subsequent codification in 1954 by the General Assembly, P.L. 1954, ch. 3297, § 1, the city has not seen fit to address in its retirement ordinances the question of whether otherwise disabled employees must mitigate their injuries through surgery in order to qualify for an accidental-disability pension. The city merely has set forth in many permutations the eligibility requirements for accidental disability. We therefore deem Mancini to be inapplicable to the case at bar.

[10] In support of this proposition, the city points to the ordinance now codified at § 17-183(a), which reads:

undergo surgery might "take advantage" of the retirement system by "obtain[ing] benefits and then at some point in the future obtain[ing] corrective surgery, rendering her capable of performing the essential functions of the job while collecting accidental[-]disability retirement." A review of § 17-189(h) of the Providence Code demonstrates why this claim is unavailing.

Section 17-189(h) strikes a balance between the drafters' aim to maintain fiscal stability through protection of the retirement system and the desire to compensate employees who have incurred permanent disabilities as a result of their service with the city. It provides that all retired employees who receive a disability pension must submit a physician's certification of their disability on a yearly basis. Additionally, the city may require employees retired pursuant to § 17-189(f) to undergo an annual medical examination. Section 17-189(h). Refusal to submit to that examination will result in the "discontinu[ation]" of pension benefits, and, if the retired employee continues to refuse the medical examination, a complete revocation of the pension may result. Id. If the medical examination demonstrates "that the disability * * * has been removed" and the retired employee has not yet reached the age of service retirement, he or she may be appointed to a comparable position within his or her former municipal department. Id. Consequently, the provisions set forth in § 17-189(h) safeguard the retirement system from the form of abuse the city claims could arise by granting accidental-disability retirement to a

"The general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of this article are hereby vested in a retirement board. The retirement board shall from time to time establish rules and regulations for the administration and transaction of the business of the retirement system, and shall perform such other functions as are required for the execution of this article."

The city also cites to § 908(b)(1) of the Providence Home Rule Charter of 1980, as amended in 2006, which provides, in relevant part, that the board has the authority "[t]o establish rules and regulations for and be responsible for the administration and operation of the city employee retirement systems under its jurisdiction[.]"

physically incapacitated employee whose only prospect for recovery includes a surgical procedure to which the employee refuses to submit. Contrary to the city's contention, if an employee mitigated his or her permanent disability at a later date and the disability subsequently ceased, the retired employee's entitlement to accidental-disability pension benefits would end. Since the clear purpose of Article VI, the legislative scheme in which § 17-189(f) is situated, would not fail in the absence of a mitigation requirement, we decline to judicially impose a requirement that was omitted by the drafters of the ordinance. See Wehr, Inc., 700 A.2d at 1088.

In the case before us, the board determined that Prew, "who would otherwise be found permanently disabled," was not eligible for accidental-disability retirement based on its finding that "[t]he evidence * * * does not establish that Prew is incapacitated for the performance of her job duties if she elects not to have surgery." The board was without authority to impose that condition, and, in so doing, committed an error of law warranting relief.

**Conclusion**

For the reasons stated herein, we quash the decision of the City of Providence Retirement Board and remand this case to that tribunal for proceedings consistent with this opinion. The record is remanded to the City of Providence Retirement Board with our decision endorsed thereon.

- 14 -



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Patrizia Prew v. Employee Retirement System of the City of Providence.

**CASE NO:**      No. 2014-270-M.P.

**COURT:**      Supreme Court

**DATE OPINION FILED:**  July 13, 2016

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**      Retirement Board of the Employee Retirement System of the City

of Providence

**JUDGE FROM LOWER COURT**:

N/A

**ATTORNEYS ON APPEAL:**

For Petitioner:   Joseph F. Penza, Jr., Esq.
               John D. Meara, Esq.

For Respondent:  Kenneth B. Chiavarini, Esq.