Justice Flaherty, dissenting. I respectfully dissent from the holding of the majority in this case. Although this Court previously has observed that a portion of the operative version of the ordinance at issue in this case “is not well drafted and is certainly not clear and unambiguous,” Prew v. Employee Retirement System of Providence, 139 A.3d 556, 561 (R.I. 2016) (quoting Morse v. Employees Retirement System of Providence, 139 A.3d 385, 391-92 (R.I. 2016)), I am in agreement with the majority that the section of the ordinance at issue here, § 17-189(8)(a), is clear and unambiguous. I also agree with the majority that § 17-189(8)(a) “does not specifically set forth the responsibility of the board in a situation such as this * * Yet, unlike the majority, I am constrained to conclude that nothing in the ordinance empowered the board to suspend John Sauro’s pension benefits under the circumstances present in this case. My reading of the ordinance leads me to the inevitable conclusion that § 17 — 189(8)(a) empowers the board to suspend or revoke a pensioner’s disability benefits under two scenarios only, neither of which is present here. Therefore, I conclude that the clear and unambiguous language of § 17 — 189(8)(a) directs the board to place Sauro on a list for reinstatement and, in the interim, to continue to provide his disability benefits. Because the provision of the ordinance is clear and unambiguous, our task should be confined to applying “the plain and ordinary meaning of [its] words.” Town of Warren v. Bristol Warren Regional School District, 159 A.3d 1029, 1039 (R.I. 2017) (quoting Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1078 (R.I. 2013)). Section 17-189(8)(a) sets forth a straightforward scheme for the re-examination of disability pensioners. Once per year, a pensioner may be required to undergo an independent medical examination (IME). If a pensioner refuses to do so, the board has the authority to suspend his pension benefits. If a pensioner’s refusal to submit to an IME continues for a year, the board is required to revoke his disability pension. Thus refusal of an IME presents the first scenario in which the board may suspend or revoke a pensioner’s disability pension.[1] After a pensioner undergoes an IME, there are three possible outcomes. The examination could reveal that the pensioner’s disability persists. In that case, the pensioner’s disability benefits continue to flow, uninterrupted. Alternatively, the examination could “indicate!] that the disability of the pensioner has been removed!.]” If that is the case, then the pensioner’s age determines the result. If the disability has been removed and the pensioner has reached the age of service retirement, then the pensioner’s disability pension is converted to a “normal retirement benefit as if he or she had not been disabled.” However, if the disability has been removed and the pensioner is “under the age of service retirement,” a third situation arises. In that case, the pensioner’s “name shall be placed on such appropriate lists of candidates as are prepared for appointment to a position in his department for which he is stated to be qualified in a salary grade comparable to that from which he or she was last retired.” (Emphasis added.) Once the pensioner is placed on the reinstatement list, “lie or she shall be reinstated as a member and participate in the benefits of the retirement system with credit for service rendered prior to disability retirement, and for the period during which he received the disability allowance!.]” The credit-for-service regime applies, however, only if the pensioner “did not refuse to accept such reinstatement when it was first offered to him or her[.]” If the pensioner declines reinstatement after placement on the reinstatement list, then “the pension shall be discontinued and any right to farther benefits under the retirement system shall be based solely on his or her service rendered prior to his or her disability retirement.” Accordingly, refusal of reinstatement presents the second scenario in which the board is authorized to terminate a pensioner’s disability pension benefits. It seems clear to me, therefore, that there are only two scenarios under § 17-189(8)(a) that empower the board to suspend or revoke a pensioner’s disability benefits: one, when a pensioner refuses to undergo an IME; and, two, when a pensioner whose disability has béen removed and who is under the age of service retirement refuses reinstatement. It is beyond dispute that neither of those situations applies in this case. Sauro, who is under the age of service retirement, has undergone an IME with Brian McKeon, M.D., and has not yet refused reinstatement. Sauro is therefore in the following position: He has undergone an IME but, "even though he remains under the age of service retirement and subject to reinstatement, the board has declined to place him on the reinstatement list. According to the majority, Dr. McKeon’s opinion that Sauro is unfit to return to work for reasons other than his original disability empowers the board to refuse to place him on the reinstatement list and to suspend his disability pension benefits until Sauro proves he is fit for service in the fire department. I cannot agree with that conclusion. I do not take issue with the facts as they are set forth in the majority opinion. And, as the majority aptly points out, most of Sauro’s difficulties in this case appear to be largely of his own doing. However, an unattractive fact pattern does not enlarge the powers of the board beyond those set forth in § 17-189(8)(a). Doctor McKeon’s examination revealed that Sauro’s shoulder injury — the injury upon which his disability pension was premised — has been removed. Moreover, it is also true that Dr. McKeon concluded that Sauro had other ailments, both physical and psychological,' which render him disabled and unable to return to work as a firefighter.[2] As the majority observes, § 17-189(8)(a) does not specify what the responsibility of the board is in a scenario such as this, where the disability that triggered pension benefits “has been removed” but an IME reveals that the pensioner is unable to work for' other reasons. Nonetheless, because Sauro’s operative disability — his shoulder injury — has been removed, and because Sauro is under the age of service retirement, under the ordinance the board was required to place Sauro on the reinstatement list. If the board had done that, and if it had recalled Sauro, the board could have , reevaluated its position if some other condition prevented him from accepting an appointment. As of this time, however, Sauro has not been placed on a list and consequently has not had the opportunity to accept or decline reinstatement to any position.’ Respectfully, I also disagree with the majority’s rationale that .Sauro, is neither “prepared” nor “qualified” to return to work in the fire department. The majority reaches this conclusion based on a grammatical analysis of § 17-189(8)(a), an analysis with which I cannot concur. The pertinent portion of § 17-189(8)(a) provides: “If the examination indicates that the disability of the pensioner has been removed and said pensioner is under the age of service retirement, his or her name shall be placed on such appropriate lists of candidates as .are prepared for appointment to a position in his department for which he is stated to be qualified in a salary grade comparable to that from which he or she was last retired.” (Emphasis added.) The fulcrum of the majority’s interpretation of this ordinance rests on two words: “prepared” and “qualified.” The majority first emphasizes that Sauro is not “prepared” to return to work, defining that term to mean “properly expectant, organized, or equipped; ready[.]” In defining “prepared” to include a physical connotation, the majority ‘also declares that the word “prepared” modifies the word “candidates.” The majority then reasons that because Sauro is a “candidate” who is not “prepared" — meaning he is not “properly expectant, organized, or equipped; ready” — to return to work in the Providence Fire. Department, the board need not place his name on a list for reinstatement. Although it provides no definition for the term, the majority also holds that Sauro is not. “qualified” to return to work. First, I am of the firm opinion that the word “prepared” modifies the word'“lists,” not the word “candidates.” The term “candidates” is part of a prepositional phrase— ie., “lists of candidates” — that, the term “prepared” modifies in its entirety. Therefore, in my opinion, a plain reading of this section of the ordinance means, that, when an IME shows that a pensioner’s disability “has been removed,” his name “shall be placed on” a list for reinstatement, a list— not a candidate — that has been “prepared.” Pursuant to my understanding of § 17-189(8)(a)’s clear and unambiguous language, the removal of the triggering disability requires the board to place that pensioner on a “prepared” list for reinstatement. In addition, I must also depart from the majority’s application of the word “quali-fled.” Although the majority does not define what it means for a pensioner to. be “qualified” — despite concluding that Sauro is not — I am led to the conclusion that the word “qualified” carries with it no connotation of physical readiness. See Black’s Law Dictionary 1436- (10th ed. 2014) (defining “qualified” to mean “[possessing the. necessary qualifications; capable or competent”); see also Random House Unabridged Dictionary 1578 (2d ed. 1993) (defining “qualified” as “having the qualities, accomplishments, etc., that fit a person for some function, office, or the like”). In my opinion, the word “qualified” conveys a set of professional characteristics, not physical condition. As an example, Sauro, formerly a firefighter, may not be “qualified” to be on the arson squad or the fire prevention bureau. However, in my view, Sauro is “qualified” to return to work in the fire department, at least for purposes of placing his name on a reinstatement list. Based-on the clear paths set forth by the language of § 17~189(8)(a), whether he is physically capable of actually returning to work fighting fires is a question for another day. Therefore, I cannot agree that the board is empowered to ignore'the clear mandate of the ordinance — i.e., Sauro’s name “shall be placed on such appropriate lists of candidates as ase prepared .for appointment to a position in ¡his department for which he is stated to-be qualified in a salary grade comparable to that from which he or she was last retired.” Moreover, after concluding — correctly in my view — that § 17-189(8)(a) is clear and unambiguous, the majority then goes on to say that, had it considered § 17-189(8)(a) to be ambiguous, it would have reached the same result in this case. Here, I must again respectfully depart from the majority’s analysis. As this Court has recently explained, Providence’s accidental-disability-retirement ordinance, located in § 17-189, “is remedial in nature.” Prew, 139 A.3d at 563. Therefore, based on this Court’s well established case law, if § 17-189(8)(a) were ambiguous,'we would construe it in Sauro’s favor. Id. Indeed, “[a]s a remedial measure intended to compensate employees who become disabled as the result of an injury suffered in the line of duty, ‘any ambiguities * * * must be construed liberally in favor of the employee.’ ” Id. (quoting McCarthy v. Environmental Transportation Services, Inc., 865 A.2d 1056, 1063 (R.I. 2005) ).[3] Although Sauro’s actions during the time he collected a disability pension at the expense -of the taxpayers of the City of Providence can certainly be called into question, I nonetheless reach the conclusion that the governing ordinance, § 17-189(8)(a), does not cloak the board with the power the majority grants to it today. For those reasons, I would affirm the judgment of the Superior Court. . In fact, as the majority notes, this precise situation occurred in this case. In 2013, the board suspended Sauro’s pension benefits after he initially refused to attend an IME with Brian McKeon, M.D., in Boston, Massachusetts. . Although there may have been fertile ground to challenge the opinion of Dr, MeKeon, an orthopedic surgeon, about medical conditions beyond his area of expertise, for some reason Sauro did not appear at that hearing nor did he seek review of the board’s decision to accept the doctor's medical opinions. . Nor do I concur with the majority’s assessment that interpreting § 17 — 189(8)(a) in this manner reaches an "absurd result,” I adhere to the position that this Court, as a matter' of law, ought to invoke the "absurd result” doctrine in only the most extraordinary of circumstances, such as when an interpretation of a statute or ordinance would render legislative language wholly meaningless or render a statutory scheme unable to function. In this case, it is not absurd for the board to follow the ordinance's clear language and place Sauro on a list for reinstatement. Thereafter, when called upon for a job for which he is qualified — likely the position of firefighter— the board can reassess whether Sauro is fit to serve. His placement on the list, in and of itself, is not an absurd- result. In my view, the ordinance’s structure — which does not render language meaningless or leave the board unable to function — demands it. It may be troubling in the view of many that Sauro continues to receive disability benefits in the interim, but that is a decision left to the City of Providence’s elected officials, who enact legislation, not this Court. Here, § 17— 189(8)(a) is unequivocal: Sauro shall be placed on a list for reinstatement; thereafter, he has the option to accept or refuse being recalled for duty. Based on the language employed in the ordinance, I am perplexed as to how this wait-and-see approach — again, an approach dictated by the ordinance — would lead to an "absurd result.”