February 20, 2018

**Supreme Court**

No. 2016-170-Appeal.

(PC 14-3388)

John Sauro                          :

v.                          :

James Lombardi, in his capacity as          :
Treasurer of the City of Providence, et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

John Sauro                     :

v.                         :

James Lombardi, in his capacity as    :
Treasurer of the City of Providence, et al.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**   This case came before the Supreme Court on November 8, 2017, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The defendants, the City of Providence (the city) and the Retirement Board of the Employees Retirement System of the City of Providence (the board), (collectively defendants), appeal from the entry of summary judgment in favor of the plaintiff, John Sauro (plaintiff or Sauro).  On appeal, the defendants argue that the trial justice erred by requiring the city to continue to provide accidental disability pension benefits to the plaintiff and to place him on a waiting list to return to his position at the Providence Fire Department pursuant to § 17-189(8)(a) of the Providence Code of Ordinances.[1]

---

[1] Section 17-189(8)(a) of the Providence Code of Ordinances provides:

> "Re-examination of members retired on account of disability: Once each year the director of personnel may require all pensioners to undergo a medical examination, by a physician or physicians engaged by the director of personnel.  In accordance with this section, each pensioner shall annually provide certification from a physician of their disability.  Should any such pensioner refuse to

After hearing the arguments of counsel, examining the memoranda submitted by the parties, and reviewing the record, we are of the opinion that cause has not been shown and that this case should be decided without further briefing or argument. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## Facts and Travel

In July 1998, plaintiff suffered a right shoulder injury while performing his firefighter duties. Mr. Sauro had been a firefighter since August 5, 1991. In October 2000, the board granted plaintiff an accidental disability pension for his on-the-job shoulder injury. In April 2011, footage of plaintiff lifting substantial weights at a gym aired on a local television channel. The board subsequently ordered plaintiff to submit to an independent medical examination

---

submit to such examination his or her pension shall be discontinued until his or her withdrawal of such refusal, and should his or her refusal continue for a year, all his or her rights in and to such pension shall be revoked by the retirement board. If the said examination indicates that the disability of the pensioner has been removed and said pensioner has attained the age of service retirement said pension will be converted to the normal retirement benefit as if he or she had not been disabled. *If the examination indicates that the disability of the pensioner has been removed and said pensioner is under the age of service retirement, his or her name shall be placed on such appropriate lists of candidates as are prepared for appointment to a position in his department for which he is stated to be qualified* in a salary grade comparable to that from which he or she was last retired. Upon reinstatement to active service at a salary grade comparable to that from which he or she was last retired, he or she shall be reinstated as a member and participate in the benefits of the retirement system with credit for service rendered prior to disability retirement, and for the period during which he received the disability retirement allowance, provided that he or she did not refuse to accept such reinstatement when it was first offered to him or her; in the event of such refusal, the pension shall be discontinued and any rights to further benefits under the retirement system shall be based solely on his or her service rendered prior to his or her disability retirement. (Emphasis added.)

- 2 -

(IME). At the 2011 IME, it was determined that plaintiff remained disabled from his 1998 injury. Again in 2013, the board directed plaintiff to undergo an IME, to be conducted by Brian McKeon, M.D., in Boston, Massachusetts; plaintiff refused to do so because, he asserted, he was bedridden due to both physical and psychological illnesses. The city then hired a private investigator to undertake surveillance of plaintiff. In September 2013, plaintiff was observed leaving his home, driving his vehicle, and shopping at various retail stores. On December 18, 2013, the board voted to suspend plaintiff's accidental disability pension based on his failure to attend the IME that had been scheduled for October 16, 2013.

The plaintiff filed this action on July 8, 2014, seeking to overturn the board's decision to suspend his benefits. The plaintiff sought a preliminary injunction to restore his accidental disability pension benefits, and a five-day hearing was held in October 2014. The trial justice issued a written decision on December 2, 2014, denying plaintiff's motion for a preliminary injunction. In the face of that decision, plaintiff agreed to undergo the IME on December 23, 2014, and his accidental disability pension benefits immediately were reinstated. The examining physician, Dr. McKeon, concluded that "[plaintiff] could fight fires with [the right] shoulder and work through this as he [h]as in the last 15 years[,]" and that "[r]elative to [plaintiff's] right shoulder, he is functional." However, Dr. McKeon ultimately opined that plaintiff was not fit to return to his firefighter duties based on unrelated psychological disabilities and colorectal illness. The record discloses that it was plaintiff who convinced Dr. McKeon that he was not fit to serve as a firefighter. The plaintiff produced a comprehensive file detailing his complicated physical and mental health history, which he presented to Dr. McKeon at the IME. In his opinion letter to the board, Dr. McKeon disclosed that plaintiff provided him with medical documentation and personal notes about his maladies:

"I also received several MRI reports which the patient gave to me today.
"* * *
"The patient also gave me a tremendous amount of handwritten notes with all of his significant psychiatric conditions that have deteriorated over the last 2 years.
"* * *
"Finally, I want to mention there is a significant amount of colorectal notes that were given to me by the patient.
"* * *
"He takes multiple medications. Many of them are psychiatric medications. He gave me a list which I reviewed."

Doctor McKeon therefore concluded:

"At this point with regard to his work employment disability, this seems to be the one issue relative to this patient. I believe based on his shoulder that this gentleman is clearly not totally disabled. The status of his disability is not related to his shoulder.
"* * *
"Overall I believe this patient is disabled because of the other issues, but not relative to the right shoulder."

On April 22, 2015, the board voted to discontinue plaintiff's accidental disability pension "pursuant to medical documentation received by the [b]oard confirming that [plaintiff was] no longer disabled as a result of [his] July 17, 1998 job-related injury." Based on his inability to return to work as a firefighter, the board did not place plaintiff on a list for appointment to duty. Significantly, although both plaintiff and his attorney were notified on April 17, 2015, of the impending board meeting scheduled for April 22, 2015, neither plaintiff nor his previous counsel attended the proceeding.

On August 13, 2015, plaintiff filed a thirteen-count second-amended complaint. In the face of questions concerning the subject-matter jurisdiction of the Superior Court to hear the merits of plaintiff's complaint, the parties stipulated to the dismissal of counts 1-12[2] on

---

[2] The following are the first 12 counts contained in plaintiff's second-amended complaint: Count 1, Free Speech and Petitioning the Government for Redress of Grievances; Count 2, Fourteenth

September 16, 2015.[3]  The remaining count, count 13, sought declaratory and injunctive relief, alleging that, in accordance with § 17-189(8)(a) of the pension ordinance, plaintiff was entitled to continue to receive his accidental disability pension during the time he remained on a waitlist for an opening in the fire department.  In count 13, plaintiff alleged that, in accordance with § 17-189(8)(a), the city was required to pay accidental disability pension benefits until his appointment to a position within the department.  Both plaintiff and the city filed cross-motions for summary judgment on the sole remaining count, and a hearing was held on October 5, 2015.  At the outset, the trial justice determined that the Superior Court was vested with subject-matter jurisdiction over a claim for declaratory and injunctive relief[4], because plaintiff was simply

---

Amendment Violation of Due Process; Count 3, Fourteenth Amendment Violation of Equal Protection; Count 4, Contract Clause; Count 5, Takings Clause; Count 6, Breach of Contract; Count 7, Promissory Estoppel; Count 8, Tortious Interference with a Contract; Count 9, Breach of Covenant of Good Faith and Fair Dealing; Count 10, Intentional Infliction of Emotional Distress; Count 11, Loss of Consortium; and Count 12, Declaratory and Injunctive Relief.

[3] On November 24, 2014, defendants filed a motion to dismiss, in which they asserted that the Superior Court did not have jurisdiction to hear the merits of plaintiff's claims.  It is well settled that, in the absence of a specific statute, decisions of municipal boards are not cognizable in the Superior Court under the Administrative Procedures Act, and therefore, an appeal cannot be taken to the Superior Court.  Relief from a decision of the board must proceed directly to the Supreme Court by common law writ of certiorari.  *See Scolardi v. City of Providence*, 751 A.2d 754, 756 (R.I. 2000) ("In the absence of specific statutory delineation of a particular forum for relief, a party must resort to [the Supreme] Court by way of common law certiorari."); *see also Connelly v. City of Providence Retirement Board*, 601 A.2d 498, 499 (R.I. 1992).

[4] Rhode Island's Uniform Declaratory Judgments Act, G.L. 1956 chapter 30 of title 9, provides that:

> "The superior or family court upon petition, following such procedure as the court by general or special rules may prescribe, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.  No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.  The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." Section 9-30-1.

asking the court to construe § 17-189(8)(a) and pass on whether the board was correct when it voted to discontinue plaintiff's accidental disability pension benefits:

> "It has been suggested that when we get to the merits, that [plaintiff] could apply * * * for an ordinary disability. The Court is not going to make any determination as to whether Mr. Sauro is entitled to that. It is really what should he do now. And the Court feels that with the ordinance that has been set forth by both parties, with the undisputed facts, with the Chapter 9-30 [of the General Laws], which is a chapter on declaratory judgments, it clearly sets forth the scenario where the Court can interpret the statute and determine what Mr. Sauro's rights under that statute are procedurally, and then with regard to any merits, the Court is not going to get involved."

Before the trial justice—in a remarkable turn of events—plaintiff argued that he had fully recovered from his shoulder injury and all other maladies, was no longer disabled, and was ready to return to work, despite plaintiff's earlier claims of disability that served as the basis of Dr. McKeon's conclusion. When confronted with defendants' argument that plaintiff could not return to work due to his other illnesses, plaintiff's counsel responded:

> "I understand the City's argument is this makes little sense that you would have someone who presumably cannot return to work for other disabilities—a point which we vigorously disagree with, but let's get by that—what they are trying to do in their papers is to draft new legislation, which is not their job, not my job, and certainly not the Court's job."

---

Rule 57 of the Superior Court Rules of Civil Procedure provides the mechanism for actions under the Uniform Declaratory Judgments Act in the Superior Court:

> "The procedure for obtaining a declaratory judgment authorized by statute shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."

Rather, plaintiff argued that he should receive a return of benefits while remaining on a list for appointment for duty as is contemplated by § 17-189(8)(a), without any evidence or finding by the board that he was fit for duty and prepared to return to the department. The plaintiff urged a "wait and see" approach:

> "I think all we're asking for at this time is, interpret the [ordinance] our way, get him back on disability, have him go on the list, and let the City make the call at that point. If they want to let him sit on the list for the next two years, so be it, but he continues to receive his disability pension. If they want to call him back next week, fine, and then *we'll see what happens at that point*." (Emphasis added.)

The city was not convinced that plaintiff had recovered from his other debilitating illnesses:

> "[Y]ou can't ignore Mr. Sauro testifying under oath, numerous occasions, and the Court is well aware of it, that he had some twelve colorectal surgeries, unable to even stay on the stand for a period of time, asked for numerous breaks, had serious psychological issues that prevented him—he would stay in bed— both he and his wife testified extensively as to the numerous disabilities that prevented him, not just [from] returning to work, but to travel from here to Boston to be examined by a doctor. It is just convenient that * * * we hear for the first time that those disabilities are no longer present. *Miraculous*." (Emphasis added.)

The trial justice ultimately interpreted ordinance § 17-189(8)(a) in plaintiff's favor, concluding that the ordinance required the board to place plaintiff on a waiting list for an opening in the fire department and further concluding that, during the time that plaintiff was awaiting reappointment, the city must continue to pay him accidental disability pension benefits:

> "[T]he Court sees nothing in the examination of the [ordinance] that once disability is removed, that there is an authority for the Pension Board to suspend benefits for other reasons. * * *
>
> "[U]nder the [ordinance] the Courts cannot suspend his pension benefits merely because they feel that in another proceeding there was some medical evidence that allowed [the board] to conclude that Mr. Sauro was not fit for duty. * * *

> "The defendant is ordered to pay all the accidental disability benefits until such time as there is a formal determination after a hearing as to whether or not Mr. Sauro can, in fact, return to work."

Accordingly, the trial justice granted plaintiff's motion for summary judgment, denied defendants' motion for summary judgment, and ordered defendants to "pay all the accidental disability benefits until such time as there is a formal determination after a hearing as to whether or not [plaintiff] can, in fact, return to work." An order to that effect was entered, and the city timely appealed.

On appeal, the city argues that: (1) the board was not required under § 17-189(8)(a) to place plaintiff on a waiting list for a position within the fire department because of Dr. McKeon's report, which concluded that plaintiff suffered from several disabling conditions that prevented him from returning to the department; (2) § 17-189(8)(a) does not provide for the situation in which a pensioner has recovered from the work-related injury but continues to suffer from non-work-related injuries that prevent him from returning to service; and (3) it would be an absurd result to require the board to provide indefinite accidental disability pension benefits to a person who has recovered from the work-related injury that triggered the benefits.

### Standard of Review

This Court reviews a trial justice's decision granting summary judgment *de novo. See Sola v. Leighton*, 45 A.3d 502, 506 (R.I. 2012); *Lynch v. Spirit Rent-A-Car, Inc.*, 965 A.2d 417, 424 (R.I. 2009). It is well established that "[s]ummary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." DeMaio v. Ciccone, 59 A.3d 125, 129 (R.I. 2013) (quoting *Estate of Giuliano v. Giuliano*, 949 A.2d 386, 390 (R.I. 2008)). Although summary judgment is recognized as a drastic remedy, "to avoid summary judgment[,] the burden is on the nonmoving party to produce competent evidence that 'prove[s] the existence

of a disputed issue of material fact[.]'" *Sullo v. Greenberg*, 68 A.3d 404, 406-07 (R.I. 2013) (quoting *Mutual Development Corp. v. Ward Fisher & Co.*, 47 A.3d 319, 323 (R.I. 2012)). Moreover, "[s]ummary judgment is appropriate only when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" *Sola*, 45 A.3d at 506 (quoting *Plunkett v. State*, 869 A.2d 1185, 1187 (R.I. 2005)). An opposing party to a motion for summary judgment always has "an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." *The Providence Journal Co. v. Convention Center Authority*, 774 A.2d 40, 46 (R.I. 2001) (quoting *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I. 1998)).

**Analysis**

**Interpretation of Section 17-189(8)(a)**

The city appeals from the trial justice's declaratory judgment and interpretation of §17-189(8)(a), in which he construed that ordinance in plaintiff's favor.[5] The narrow issue before this Court is whether § 17-189(8)(a) requires the board to place plaintiff on a waiting list to be reinstated within the Providence Fire Department, when plaintiff has demonstrated he is otherwise disabled and cannot function as a firefighter. We answer in the negative.

When construing or interpreting an ordinance, this Court applies the "same rules of construction that we apply when interpreting [a] statute[ ]." *Pierce v. Providence Retirement*

---

[5] We pause to note that a trial justice is not mandated to entertain a request for declaratory relief; it is rather, purely discretionary. *See Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I. 1997) ("The decision to grant or to deny declaratory relief under the Uniform Declaratory Judgments Act is purely discretionary.") In light of the jurisdictional tension in this case, it may have been prudent for the trial justice to decline to grant declaratory and injunctive relief rather than struggle with such a narrow path. However, we are not of the opinion that it was an abuse of discretion for the trial justice to soldier on in this case. *See id.*; *see also, Woonsocket Teachers' Guild Local Union 951, AFT v. Woonsocket School Committee*, 694 A.2d 727, 729 (R.I. 1997).

*Board*, 15 A.3d 957, 963 (R.I. 2011) (quoting *Murphy v. Zoning Board of Review of South Kingstown*, 959 A.2d 535, 541 (R.I. 2008)). We "give clear and unambiguous language in an ordinance its plain and ordinary meaning." *Pawtucket Transfer Operations, LLC v. City of Pawtucket*, 944 A.2d 855, 859 (R.I. 2008). However, when it is determined that an ordinance is unclear and ambiguous, this Court must look to the "legislative intent behind the enactment." *Id.* Most notably, "under no circumstances will this Court construe a statute to reach an absurd result." *Mendes v. Factor*, 41 A.3d 994, 1002 (R.I. 2012) (quoting *Generation Realty v. Catanzaro,* 21 A.3d 253, 259 (R.I. 2011)); *see also Morse v. Employees Retirement System of City of Providence*, 139 A.3d 385, 391 (R.I. 2016).

We conclude that § 17-189(8)(a) is clear and unambiguous on its face. The ordinance plainly states:

> "If the examination indicates that the disability of the pensioner has been removed and said pensioner is under the age of service retirement, his or her name shall be placed on such appropriate lists of *candidates as are prepared for appointment* to a position in his department for which *he is stated to be qualified* in a salary grade comparable to that from which he or she was last retired." (Emphasis added.)

According to the clear and unambiguous language of the city ordinance, a candidate must be "prepared for appointment"[6] and be "stated to be qualified" for a position in the department from which he or she was last retired. Here, based on his clearly established disability, plaintiff was neither prepared[7] for appointment, nor was he qualified to resume service in the fire department. The plaintiff has repeatedly placed his inability to return to work—based upon a series of wholly

---

[6] The adjectival clause, "as are prepared for appointment" modifies the subject "candidates," not the term "lists" in the ordinance.

[7] The term "prepared" is defined as, "properly expectant, organized, or equipped; ready[.]" *See Random House Unabridged Dictionary*, (2nd ed. 1993).

- 10 -

unrelated medical infirmities—at issue throughout this case. The plaintiff vigorously maintained that he was bedridden and could not travel to Boston for an IME, nor could he withstand a medical examination. Upon finally agreeing to undergo a medical examination—in order for his benefits to be reinstated—plaintiff provided Dr. McKeon with a voluminous, self-created file of copious handwritten notes and medical reports pertaining to his unrelated medical problems. As plaintiff asked him to do, Dr. McKeon opined that plaintiff was unfit to resume service based on his psychological and colorectal illnesses. At this point, although plaintiff may have won the battle, he abandoned the arena and failed to appear at the meeting of the board. The trial justice's conclusion that there must be "a formal determination after a hearing as to whether or not [plaintiff] can, in fact, return to work[,]" misses the mark. The board did conduct a hearing on this question, but plaintiff elected not to attend.

Upon receipt of Dr. McKeon's report, the board concluded that, although plaintiff was no longer disabled from his work-related injury, he was nonetheless unable to return to work due to other unrelated illnesses; the board voted to terminate his accidental disability pension benefits. A mere ten months after Dr. McKeon's report, plaintiff avowed before the same trial justice to whom he had previously asserted an inability to return to work that all of his illnesses had subsided and he was now able to return to work. Evidence of plaintiff's cure and his swift recovery is not on the record; nor are we convinced that it was cognizable by the Superior Court. Without reconciling his current state of well-being with his own grievous assertions to Dr. McKeon a mere ten months earlier, plaintiff argued that he must be placed on a waiting list in order to "see what happens."

The trial justice correctly declined to make any findings concerning plaintiff's purported fitness for duty or his state of health. Whether plaintiff is physically qualified and prepared to

return to work is a question for the board. What is clear is that plaintiff is no longer disabled from his work-related injury and, based upon the undisputed evidence before the board, is not prepared to resume duty with the fire department based on unrelated disabilities. We are satisfied that the board acted within its authority and in accordance with the ordinance when it terminated plaintiff's accidental disability pension benefits. We are also convinced that in the face of these facts, the board could not properly have placed plaintiff on a list of candidates who are prepared to return to work.

Although we conclude that § 17-189(8)(a) is clear and unambiguous, we note that, had we found ambiguity, we would have reached the same conclusion. When confronted with an ambiguous statute or ordinance, this Court relies "upon principles of statutory construction, in order to discern 'the intent and purpose of the Legislature.'" *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 n.7 (R.I. 2008) (quoting *State v. Peterson*, 722 A.2d 259, 264 (R.I. 1998)). Again, we have consistently held that "[t]his [C]ourt will not construe a statute to reach an absurd result." *Id.* (quoting *Peterson,* 722 A.2d at 264).

Although the ordinance does not specifically set forth the responsibility of the board in a situation such as this—in which the work-related disability "has been removed," but the person is unable to return to work due to unrelated debilitating illness—an interpretation of § 17-189(8)(a) requiring the city to pay indefinite accidental disability pension benefits to a person who is no longer accidentally disabled but is otherwise unable to return to duty would be a construction amounting to an absurd result. *See Iselin*, 943 A.2d at 1049 n.7; *Peterson,* 722 A.2d at 264. Having examined the ordinance as a whole, and mindful of its declared purpose,

- 12 -

we decline to attribute such intent to the city.[8] Allowing plaintiff perpetual accidental disability pension benefits under these circumstances runs contrary to the ordinance's objectives, which are to compensate work-injury-related disabilities and encourage qualified persons who are relieved of those disabilities to return to work. It would also be patently absurd, in light of the board's finding that plaintiff is disabled, to place a disabled firefighter on a list for a position that he is unqualified to perform.

The plaintiff is not without a remedy. The avenue available to the plaintiff in this case is to return to the board in order to demonstrate that he is fit to return to duty and is prepared to do so, or that he qualifies for an ordinary disability pension. Accordingly, we conclude that the decision of the trial justice declaring that the plaintiff's pension benefits should be reinstated and he should be placed on a waiting list to resume active service was erroneous, overlooked material evidence, and was clearly wrong.

## Conclusion

For the reasons set forth herein, we vacate the judgment of the Superior Court. The papers may be remanded to the Superior Court.

---

[8] Section 17-181.1 of the code of ordinances sets forth the purpose of chapter 17:

> "Pursuant to the benefits and rights of self-government prescribed in the Providence Home Rule Charter and guaranteed by the Constitution of the State of Rhode Island, the purpose of this chapter is to *preserve the health, safety and welfare of the citizens of Providence and their property and to ensure the sustainability of the employee retirement system* of the city of Providence for current and retired employees by promoting the *sustainability and longevity of the employees' retirement system* of the City of Providence." (Emphasis added.)

**Justice Flaherty, dissenting.** I respectfully dissent from the holding of the majority in this case. Although this Court previously has observed that a portion of the operative version of the ordinance at issue in this case "is not well drafted and is certainly not clear and unambiguous," *Prew v. Employee Retirement System of Providence*, 139 A.3d 556, 561 (R.I. 2016) (quoting *Morse v. Employees Retirement System of Providence*, 139 A.3d 385, 391-92 (R.I. 2016)), I am in agreement with the majority that the section of the ordinance at issue here, § 17-189(8)(a), is clear and unambiguous. I also agree with the majority that § 17-189(8)(a) "does not specifically set forth the responsibility of the board in a situation such as this * * *." Yet, unlike the majority, I am constrained to conclude that nothing in the ordinance empowered the board to suspend John Sauro's pension benefits under the circumstances present in this case. My reading of the ordinance leads me to the inevitable conclusion that § 17-189(8)(a) empowers the board to suspend or revoke a pensioner's disability benefits under two scenarios only, neither of which is present here. Therefore, I conclude that the clear and unambiguous language of § 17-189(8)(a) directs the board to place Sauro on a list for reinstatement and, in the interim, to continue to provide his disability benefits.

Because the provision of the ordinance is clear and unambiguous, our task should be confined to applying "the plain and ordinary meaning of [its] words." *Town of Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1039 (R.I. 2017) (quoting *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1078 (R.I. 2013)). Section 17-189(8)(a) sets forth a straightforward scheme for the re-examination of disability pensioners. Once per year, a pensioner may be required to undergo an independent medical examination (IME). If a pensioner refuses to do so, the board has the authority to suspend his pension benefits. If a pensioner's refusal to submit to an IME continues for a year, the board is required to revoke his

disability pension. Thus refusal of an IME presents the first scenario in which the board may suspend or revoke a pensioner's disability pension.[1]

After a pensioner undergoes an IME, there are three possible outcomes. The examination could reveal that the pensioner's disability persists. In that case, the pensioner's disability benefits continue to flow, uninterrupted. Alternatively, the examination could "indicate[] that the disability of the pensioner has been removed[.]" If that is the case, then the pensioner's age determines the result. If the disability has been removed and the pensioner has reached the age of service retirement, then the pensioner's disability pension is converted to a "normal retirement benefit as if he or she had not been disabled." However, if the disability has been removed and the pensioner is "under the age of service retirement," a third situation arises. In that case, the pensioner's "name *shall* be placed on such appropriate lists of candidates as are prepared for appointment to a position in his department for which he is stated to be qualified in a salary grade comparable to that from which he or she was last retired." (Emphasis added.)

Once the pensioner is placed on the reinstatement list, "he or she shall be reinstated as a member and participate in the benefits of the retirement system with credit for service rendered prior to disability retirement, and for the period during which he received the disability allowance[.]" The credit-for-service regime applies, however, only if the pensioner "did not refuse to accept such reinstatement when it was first offered to him or her[.]" If the pensioner declines reinstatement after placement on the reinstatement list, then "the pension shall be discontinued and any right to further benefits under the retirement system shall be based solely on his or her service rendered prior to his or her disability retirement." Accordingly, refusal of

_____

[1] In fact, as the majority notes, this precise situation occurred in this case. In 2013, the board suspended Sauro's pension benefits after he initially refused to attend an IME with Brian McKeon, M.D., in Boston, Massachusetts.

- 15 -

reinstatement presents the second scenario in which the board is authorized to terminate a pensioner's disability pension benefits.

It seems clear to me, therefore, that there are only two scenarios under § 17-189(8)(a) that empower the board to suspend or revoke a pensioner's disability benefits: one, when a pensioner refuses to undergo an IME; and, two, when a pensioner whose disability has been removed and who is under the age of service retirement refuses reinstatement. It is beyond dispute that neither of those situations applies in this case. Sauro, who is under the age of service retirement, has undergone an IME with Brian McKeon, M.D., and has not yet refused reinstatement. Sauro is therefore in the following position: He has undergone an IME but, even though he remains under the age of service retirement and subject to reinstatement, the board has declined to place him on the reinstatement list. According to the majority, Dr. McKeon's opinion that Sauro is unfit to return to work for reasons other than his original disability empowers the board to refuse to place him on the reinstatement list and to suspend his disability pension benefits until Sauro proves he is fit for service in the fire department. I cannot agree with that conclusion.

I do not take issue with the facts as they are set forth in the majority opinion. And, as the majority aptly points out, most of Sauro's difficulties in this case appear to be largely of his own doing. However, an unattractive fact pattern does not enlarge the powers of the board beyond those set forth in § 17-189(8)(a). Doctor McKeon's examination revealed that Sauro's shoulder injury—the injury upon which his disability pension was premised—has been removed. Moreover, it is also true that Dr. McKeon concluded that Sauro had other ailments, both physical and psychological, which render him disabled and unable to return to work as a firefighter.[2] As

---

[2] Although there may have been fertile ground to challenge the opinion of Dr. McKeon, an orthopedic surgeon, about medical conditions beyond his area of expertise, for some reason

- 16 -

the majority observes, § 17-189(8)(a) does not specify what the responsibility of the board is in a scenario such as this, where the disability that triggered pension benefits "has been removed" but an IME reveals that the pensioner is unable to work for other reasons. Nonetheless, because Sauro's operative disability—his shoulder injury—has been removed, and because Sauro is under the age of service retirement, under the ordinance the board was required to place Sauro on the reinstatement list.

If the board had done that, and if it had recalled Sauro, the board could have reevaluated its position if some other condition prevented him from accepting an appointment. As of this time, however, Sauro has not been placed on a list and consequently has not had the opportunity to accept or decline reinstatement to any position.

Respectfully, I also disagree with the majority's rationale that Sauro is neither "prepared" nor "qualified" to return to work in the fire department. The majority reaches this conclusion based on a grammatical analysis of § 17-189(8)(a), an analysis with which I cannot concur.

The pertinent portion of § 17-189(8)(a) provides:

> "If the examination indicates that the disability of the pensioner has been removed and said pensioner is under the age of service retirement, his or her name shall be placed on such appropriate *lists of candidates as are prepared for appointment to a position in his department for which he is stated to be qualified* in a salary grade comparable to that from which he or she was last retired." (Emphasis added.)

The fulcrum of the majority's interpretation of this ordinance rests on two words: "prepared" and "qualified." The majority first emphasizes that Sauro is not "prepared" to return to work, defining that term to mean "properly expectant, organized, or equipped; ready[.]" In defining "prepared" to include a physical connotation, the majority also declares that the word "prepared"

---

Sauro did not appear at that hearing nor did he seek review of the board's decision to accept the doctor's medical opinions.

modifies the word "candidates." The majority then reasons that because Sauro is a "candidate" who is not "prepared"—meaning he is not "properly expectant, organized, or equipped; ready"—to return to work in the Providence Fire Department, the board need not place him name on a list for reinstatement. Although it provides no definition for the term, the majority also holds that Sauro is not "qualified" to return to work.

First, I am of the firm opinion that the word "prepared" modifies the word "lists," not the word "candidates." The term "candidates" is part of a prepositional phrase—*i.e.*, "lists of candidates"—that the term "prepared" modifies in its entirety. Therefore, in my opinion, a plain reading of this section of the ordinance means that, when an IME shows that a pensioner's disability "has been removed," his name "shall be placed on" a list for reinstatement, a list—not a candidate—that has been "prepared." Pursuant to my understanding of § 17-189(8)(a)'s clear and unambiguous language, the removal of the triggering disability *requires* the board to place that pensioner on a "prepared" list for reinstatement.

In addition, I must also depart from the majority's application of the word "qualified." Although the majority does not define what it means for a pensioner to be "qualified"—despite concluding that Sauro is not—I am led to the conclusion that the word "qualified" carries with it no connotation of physical readiness. *See* Black's Law Dictionary 1436 (10th ed. 2014) (defining "qualified" to mean "[p]ossessing the necessary qualifications; capable or competent"); *see also* Random House Unabridged Dictionary 1578 (2d ed. 1993) (defining "qualified" as "having the qualities, accomplishments, etc., that fit a person for some function, office, or the like"). In my opinion, the word "qualified" conveys a set of professional characteristics, not physical condition. As an example, Sauro, formerly a firefighter, may not be "qualified" to be on the arson squad or the fire prevention bureau. However, in my view, Sauro is "qualified" to

- 18 -

return to work in the fire department, at least for purposes of placing his name on a reinstatement list. Based on the clear paths set forth by the language of § 17-189(8)(a), whether he is physically capable of actually returning to work fighting fires is a question for another day.

Therefore, I cannot agree that the board is empowered to ignore the clear mandate of the ordinance—*i.e.*, Sauro's name "shall be placed on such appropriate lists of candidates as are prepared for appointment to a position in his department for which he is stated to be qualified in a salary grade comparable to that from which he or she was last retired."

Moreover, after concluding—correctly in my view—that § 17-189(8)(a) is clear and unambiguous, the majority then goes on to say that, had it considered § 17-189(8)(a) to be ambiguous, it would have reached the same result in this case. Here, I must again respectfully depart from the majority's analysis. As this Court has recently explained, Providence's accidental-disability-retirement ordinance, located in § 17-189, "is remedial in nature." *Prew*, 139 A.3d at 563. Therefore, based on this Court's well established case law, if § 17-189(8)(a) were ambiguous, we would construe it in Sauro's favor. *Id.* Indeed, "[a]s a remedial measure intended to compensate employees who become disabled as the result of an injury suffered in the line of duty, 'any ambiguities * * * must be construed liberally in favor of the employee.'" *Id.* (quoting *McCarthy v. Environmental Transportation Services, Inc.*, 865 A.2d 1056, 1063 (R.I. 2005)).[3]

---

[3] Nor do I concur with the majority's assessment that interpreting § 17-189(8)(a) in this manner reaches an "absurd result." I adhere to the position that this Court, as a matter of law, ought to invoke the "absurd result" doctrine in only the most extraordinary of circumstances, such as when an interpretation of a statute or ordinance would render legislative language wholly meaningless or render a statutory scheme unable to function. In this case, it is not absurd for the board to follow the ordinance's clear language and place Sauro on a list for reinstatement. Thereafter, when called upon for a job for which he is qualified—likely the position of firefighter—the board can reassess whether Sauro is fit to serve. His placement on the list, in and of itself, is not an absurd result. In my view, the ordinance's structure—which does not

- 19 -

Although Sauro's actions during the time he collected a disability pension at the expense of the taxpayers of the City of Providence can certainly be called into question, I nonetheless reach the conclusion that the governing ordinance, § 17-189(8)(a), does not cloak the board with the power the majority grants to it today. For those reasons, I would affirm the judgment of the Superior Court.

---

render language meaningless or leave the board unable to function—demands it. It may be troubling in the view of many that Sauro continues to receive disability benefits in the interim, but that is a decision left to the City of Providence's elected officials, who enact legislation, not this Court. Here, § 17-189(8)(a) is unequivocal: Sauro *shall* be placed on a list for reinstatement; thereafter, he has the option to accept or refuse being recalled for duty. Based on the language employed in the ordinance, I am perplexed as to how this wait-and-see approach—again, an approach dictated by the ordinance—would lead to an "absurd result."