May 26, 2021

**Supreme Court**

No. 2019-99-Appeal.
(PC 18-6236)

City of Woonsocket        :

v.        :

RISE Prep Mayoral Academy et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

City of Woonsocket          :

          v.                :

RISE Prep Mayoral Academy et al.    :


Present:  Suttell, C.J., Goldberg, Robinson, and Long, JJ.

**O P I N I O N**

"The purpose of th[e Charter Public School Act of Rhode Island] is to provide an alternative within the public education system by offering opportunities for entities * * * to establish and maintain a high performing public school program according to the terms of a charter.  The key appeal of the charter school concept is its promise of increased accountability for student achievement in exchange for increased school autonomy." General Laws 1956 § 16-77-3.1(a).

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on March 10, 2021, on appeal by the plaintiff, the City of Woonsocket (the city) from a partial final judgment of the Superior Court in favor of the defendants, RISE Prep Mayoral Academy (RISE); Brad Ward, in his capacity as City of Woonsocket Building Inspector; and Carl J. Johnson, in his capacity as City of Woonsocket Zoning Official, that denied and dismissed the city's request for

- 1 -

declaratory judgment, injunctive relief, and judicial aid in enforcement. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Travel

On February 20, 2018, RISE—a Rhode Island nonprofit corporation organized to operate a mayoral academy charter school pursuant to G.L. 1956 § 16-77.4-1—entered into a purchase and sale agreement with defendant Seven Hills Rhode Island, Inc. (Seven Hills), to purchase a parcel of land located at 30 Cumberland Street, Woonsocket, Rhode Island. [1] At the time, RISE was operating in leased space at One Social Street, Woonsocket, Rhode Island, but had reached capacity and sought to purchase a permanent facility. The Mayor of the City of Woonsocket, Lisa Baldelli-Hunt, serves as the President of the Board of Directors of RISE, as required by state law.[2]

---

[1] Judgment was not entered against Seven Hills, the owner of 30 Cumberland Street. Default entered against Seven Hills on October 24, 2018; thereafter, the city moved for entry of default judgment pursuant to Rule 55(b) of the Superior Court Rules of Civil Procedure. The trial justice denied the motion and, thus, no judgment was entered against Seven Hills.

However, the trial justice specifically found that, pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure, there was no just reason for delay, and she directed the entry of final judgment in favor of the remaining defendants.

[2] General Laws 1956 § 16-77.4-1(a) requires the board of directors of a mayoral academy be "chaired by a mayor of an included city or town." RISE's catchment area includes Woonsocket, North Smithfield, and Burrillville, Rhode Island. Accordingly, Mayor Baldelli-Hunt served as President of the RISE board of directors.

Before executing the purchase and sale agreement with Seven Hills, RISE contacted the city's zoning official and requested a zoning certificate for the Cumberland Street property.[3] RISE indicated that the current use of the property was as an office building and specifically requested that the zoning official include in the certificate a finding that their proposed use, "a public school, * * * is permitted in a C-2 zone." On January 29, 2018, a zoning certificate was issued by the city to RISE for the Cumberland Street property. The zoning certificate indicated that the property was located in a C-2 zoning district, which is defined by the zoning ordinance as a "Major Commercial District, primarily for the conduct of major retail trade and services to the general public." The zoning official concluded in the certificate that RISE's proposed use of the property was allowed by right in a C-2 zoning district because, pursuant to § 16-77-3.1(b), a charter school is a public school, and a public school is a municipal use allowed by right in a C-2 zoning district under the city's zoning ordinance.

Planning and construction commenced. In May 2018, RISE applied to, and received approval from, the Council on Elementary and Secondary Education for

---

[3] Pursuant to G.L. 1956 § 45-24-54 and § 13.1 of the Woonsocket Zoning Ordinance, the zoning officer is tasked with administration and enforcement of the zoning ordinance and is authorized to issue a zoning certificate or provide other information. Specifically, the zoning official is required to, "upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request." Section 45-24-54.

- 3 -

the Cumberland Street construction project; the project included three phases and would "provide RISE * * * with a permanent home to accommodate current enrollment as well as their planned enrollment." Apparently, in June 2018 the Woonsocket City Council got wind of the project. At a June 18, 2018 council meeting, Councilman James Cournoyer asked the mayor whether RISE was planning to relocate to Cumberland Street. According to Councilman Cournoyer, the mayor indicated that RISE was "looking to find a new location," but that due to executive privilege she could not give any further information on the subject.

Councilman Cournoyer testified that, soon thereafter, he "sent an access for public records to the [c]ity requesting any zoning certificates or any other communications in connection with 30 Cumberland Street[.]" In response, he received the aforementioned zoning certificate that had been issued to RISE on January 29, 2018, which confirmed that RISE was seeking to relocate to 30 Cumberland Street. Councilman Cournoyer confirmed that he was "concerned about the location of * * * RISE * * * at 30 Cumberland Street" because, in his opinion, it was "violative of the zoning ordinance" and because "having * * * young children in that district * * * surrounded on all three sides by heavy traffic" was concerning to him.

On August 23, 2018, the city council adopted a resolution "[t]hat the establishment and operation of RISE at 30 Cumberland Street would violate the

- 4 -

City's zoning ordinance and create public safety issues" and that authorized and directed "the City and all appropriate City officials * * * to take legal action and any other steps to seek relief[.]" Shortly thereafter, on August 29, 2018, the city filed a three-count verified complaint in the Superior Court, seeking, *inter alia*, a declaratory judgment that RISE's operation in a C-2, Major Commercial District, violated the city's zoning ordinance.[4] The city also sought injunctive relief, requesting (1) that the court transfer the controversy to the Woonsocket Zoning Board of Review so that RISE may seek relief from the zoning ordinance, and (2) judicial aid in enforcement of the city's zoning ordinance.

The trial justice conducted a bench trial on the city's claims; the city called three witnesses to testify: Rosalind DaCruz, the head of school at RISE; Carl Johnson, the Woonsocket zoning official; and Councilman Cournoyer. At the close of the city's evidence, counsel for defendant Brad Ward, the Woonsocket building inspector, moved for a judgment of dismissal as to Mr. Ward because there had been "zero allegations made [against him] either in the complaint or during the trial[.]" The city did not object to the dismissal, and the trial justice

---

[4] The city's zoning ordinance was amended on November 4, 2019, and, *inter alia*, modified § 4.5 such that a municipal use is now permitted in a C-2 zone only upon specific approval by the city council. Herein we address the pre-amendment version of the zoning ordinance that was in effect at the time pertinent to the facts in this case.

dismissed the case against Mr. Ward. The defendants then called Mr. Ward to testify.

At the conclusion of evidence, the trial justice directed the parties to file posttrial memoranda. She rendered a bench decision on January 17, 2019, denying the requested relief and finding that "the operation of RISE * * * in a C-2 zoning district [is] permitted as a municipal use * * *." In her decision, the trial justice found that the zoning ordinance is "ambiguous because the classification for municipal use and nonprofit educational institution serving young children could be arguably applied to the operation of RISE[,]" but that the zoning ordinance fails to "specifically address the appropriate classification for [a] charter school or the other private institutions that are treated as public schools under the law." Accordingly, the trial justice first looked to the city's comprehensive plan, which she found "includes an emphasis on the importance of investing resources into educational programs" and manifested the city's intent "to make education of its residents a top priority with regard to the allocation of its resources."

The trial justice then turned to state law, and noted that the Charter Public School Act of Rhode Island, chapters 77, 77.1, 77.2, 77.3, and 77.4 of title 16 of the general laws, specifically provides that "a charter school shall be deemed to be a public school[.]" Section 16-77-3.1(b). Thus, she found that "RISE * * * is legally considered a public school." Lastly, the trial justice accorded deference to

Mr. Johnson's interpretation of the zoning ordinance, finding that his conclusion in the certificate and his testimony before the court "that charter schools are public schools according to Section 16-77-3.1(b) and therefore are permitted in a C-2 commercial district as a municipal use * * * was not erroneous * * * as it was based on the law, the ordinance, and his knowledge and expertise in the field." Accordingly, the trial justice—relying on the language of the zoning ordinance, the comprehensive plan, § 16-77-3.1, and the credible testimony adduced at trial— found that "the term 'municipal use' should be interpreted to include public charter schools such as RISE[,]" because RISE "is deemed to be a public school under the law * * *." Thus, the trial justice concluded that "the operation of RISE * * * in a C-2 zoning district [is] permitted as a municipal use * * *." Judgment entered in favor of defendants, and the city timely appealed to this Court.

## Standard of Review

"A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Town of West Greenwich v. A. Cardi Realty Associates*, 786 A.2d 354, 357-58 (R.I. 2001). The factual findings of a trial justice sitting without a jury are accorded great weight, and "[i]f, as we review the record, it becomes clear to us that the record indicates competent evidence supports the trial justice's findings, we shall not substitute our

- 7 -

view of the evidence for that of the trial justice even though a contrary conclusion could have been reached." *Process Engineers & Constructors, Inc. v. DiGregorio, Inc.*, 93 A.3d 1047, 1052 (R.I. 2014) (brackets omitted) (quoting *Wellington Condominium Association v. Wellington Cove Condominium Association*, 68 A.3d 594, 599 (R.I. 2013)).

That being said, however, "questions implicating statutory interpretation are questions of law and are, therefore, reviewed *de novo* by this Court." *State ex rel. Town of Tiverton v. Pelletier*, 174 A.3d 713, 718 (R.I. 2017). We interpret ordinances and statutes in the same manner. *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556, 561 (R.I. 2016). If the language of a statute or ordinance is clear and unambiguous, it is given "its plain and ordinary meaning." *Sauro v. Lombardi*, 178 A.3d 297, 304 (R.I. 2018) (quoting *Pawtucket Transfer Operations, LLC v. City of Pawtucket*, 944 A.2d 855, 859 (R.I. 2008)). "However, when it is determined that an [enactment] is unclear and ambiguous, this Court must look to the 'legislative intent behind the enactment.'" *Id.* (quoting *Pawtucket Transfer Operations, LLC*, 944 A.2d at 859). In so doing, "the [C]ourt may take into consideration certain extrinsic matters which tend to throw some light on the legislative intent." *Nunes v. Town of Bristol*, 102 R.I. 729, 738, 232 A.2d 775, 780 (1967).

**Analysis**

On appeal, the city argues that the trial justice erred because, the city contends, she misconstrued the zoning ordinance, ignored provisions of the 2012 comprehensive plan, and applied the wrong standard of review, giving deference to the zoning official's ruling. Specifically, the city argues that § 4.5.6 of the zoning ordinance, which prohibits "[n]onprofit educational institutions serving young children including * * * elementary schools and middle schools" in a C-2 zone, is controlling because it is a "more restrictive" zoning classification, and therefore—pursuant to the rules of statutory construction—it is the controlling classification. The city also maintains that the trial justice erred in according deference to Mr. Johnson's interpretation of the zoning ordinance because, the city argues, "[t]his Court has never held that a Superior Court justice must 'accord deference' to a municipal officer's construction of a zoning ordinance[.]"

First, we agree with the trial justice's finding that the zoning ordinance is ambiguous because it fails to specifically address the proper classification for RISE's operation. Section 4 of the city's zoning ordinance "indicate[s] those uses which are permitted [as of right], conditionally permitted, or prohibited within each zoning district." The property at issue, 30 Cumberland Street, is located in a C-2 zoning district, which is defined as a "Major Commercial District, primarily for the conduct of major retail trade and services to the general public." However, two of

the classifications provided in Section 4 of the zoning ordinance are amenable to RISE's operation. RISE is incorporated as a domestic nonprofit corporation under the laws of this state, and it is organized, according to state records, to provide "a charter public school as a mayoral academy[.]" Thus, RISE's operation could be classified as a nonprofit educational institution serving young children, which is prohibited in a C-2 district. However, because it operates "a charter public school[,]" it could also be classified as a municipal use—a public school—which is permitted in a C-2 district pursuant to § 4.5.1 of the zoning ordinance. It is undisputed that state law mandates that "a charter school shall be deemed to be a public school[.]" Section 16-77-3.1(b).

Despite plaintiff's contention, the question of which use RISE's operation falls within cannot be resolved by the maxim of statutory construction that the specific prevails over a more general provision. Clearly, it is a "general rule of statutory construction * * * that when a statute of general application conflicts with a statute that specifically deals with a special subject matter, and when the two statutes cannot be construed harmoniously together, the special statute prevails over the statute of general application." *Whitehouse v. Moran*, 808 A.2d 626, 629-30 (R.I. 2002). The city's contention that RISE's operation falls under the specific definition of nonprofit educational institution, rather than the general municipal use definition, fails to recognize the multifaceted nature of the academy and that RISE

is a public school as a matter of law. Indeed, RISE is a nonprofit educational institution serving young children, created pursuant to the Charter Public School Act, and is unequivocally a public school under state law. No provision of the city's zoning ordinance addresses a specific classification for such an institution, and thus the general-specific maxim of statutory construction is inapplicable.

Because the zoning ordinance is silent as to a specific classification and RISE's operation could fall within two classifications under the ordinance, it was the trial justice's responsibility and this Court's function to "adopt the interpretation that will best carry out its evident purpose." *Nunes*, 102 R.I. at 738, 232 A.2d at 780. In doing so, we are of the opinion that we need look no further than § 16-77-3.1(b), which mandates that "[n]otwithstanding the provisions of this section *or any law to the contrary*, a charter school shall be deemed to be a public school[.]" Section 16-77-3.1(b) (emphasis added). By enacting the Charter Public School Act, the Legislature manifested its intent that charter public schools

> "be vanguards, laboratories, and an expression of the on-going and vital state interest in the improvement of education. * * * These charter public schools shall be vehicles for research and development in areas such as curriculum, pedagogy, administration, materials, facilities, governance, parent relations and involvement, social development, instructor's and administrator's responsibilities, working conditions, student performance and fiscal accountability. It is the intent of the general assembly to create *within the public school system* vehicles for innovative learning opportunities * * *." *Id.* (emphasis added).

- 11 -

This Court has invariably adhered to the view that "the General Assembly's power over public school interests [i]s 'plenary[,]'" and that article 12, section 1 of the Rhode Island Constitution "vests in the General Assembly *sole* responsibility in the field of education." *City of Pawtucket v. Sundlun*, 662 A.2d 40, 56, 57 (R.I. 1995). Thus, charter schools were created by the General Assembly to provide an alternative within the public education system in Rhode Island by offering educational opportunities to establish and maintain high-performing public education. It is unquestionable that RISE, as a mayoral charter academy, is considered a public school, and any laws or ordinances to the contrary do not affect that designation.

We conclude, as did the trial justice, that as a public school RISE's operation is considered a municipal use under the city's zoning ordinance. The city, in its 2012 comprehensive plan, characterized all public schools as "Municipal Facilities[,]" and recognized that "[t]he City's chief facility concerns, now and in the future, are for its schools." Mr. Johnson, the city's zoning official, credibly testified that in issuing the zoning certificate to RISE he concluded that "a public school is a municipal use," and "a use that's being utilized by a municipality would * * * overturn * * * any other use to be considered." Accordingly, the zoning certificate issued by the zoning official stated that "[a] public school is considered a municipal use" that is allowed by right in the C-2 zone.

Although the city objects to any deference accorded to the zoning official's findings by the trial justice, we are of the opinion that she merely assigned weight to his conclusions based on his credible testimony. This Court has declared that "some deference should be paid" to the "interpretation placed on [an] ordinance by the municipal official responsible for enforcing it[.]" *New England Expedition-Providence, LLC v. City of Providence*, 773 A.2d 259, 263 (R.I. 2001). This differs from the "considerable weight [that] should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer * * *." *Town of Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1038 (R.I. 2017) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)). However, in no case may blind deference be paid to the construction given by any official, agency, or board, as "[t]his Court is the final arbiter with respect to questions of statutory construction." *New England Expedition-Providence, LLC*, 773 A.2d at 263.

Here, the trial justice did not accord blind deference to the zoning official's determination that RISE's operation is a municipal use allowed by right in a C-2 zone, but rather she conducted a thorough analysis in which she reviewed the relevant statute, the opinions of this Court, and the city's zoning ordinance and its comprehensive plan, and she assessed the credibility of the witnesses. The trial justice found that Ms. DaCruz, who she found had credibly testified throughout

trial, established that over 70 percent of RISE's students are from the city and that RISE "clearly serves the public educational needs of Woonsocket residents." The trial justice also found Mr. Johnson's testimony to be reliable and credible and that his interpretation "was based on the law, the ordinance, and his knowledge and expertise in the field."

Conversely, the trial justice made troubling credibility findings about a duly elected city official, including the motivation underlying this suit. She found that Councilman Cournoyer "has no training or expertise in the area of zoning law enforcement or interpretation[,]" but that he nonetheless testified in opposition to RISE's relocation to 30 Cumberland Street. The trial justice found that Councilman Cournoyer's "testimony was defensive[,] * * * was self-serving[,] and it was not credible." She noted that Councilman Cournoyer "appeared to have an axe to grind with the Mayor, who is President of the Board." The trial justice observed the unfortunate circumstance in which "the Council has attempted to place politics into" the courtroom.

The trial justice was "uniquely situated to evaluate the credibility of witnesses, and our review of the inferences that * * * she [drew] from a witness's testimony is deferential." *Hilley v. Lawrence*, 972 A.2d 643, 652 (R.I. 2009). We are satisfied that the trial justice did not overlook or misconceive material evidence

when she concluded that "the operation of RISE Prep in a C-2 zoning district [is] permitted as a municipal use[.]"

Because RISE is a public school, we hold that its operation is a municipal use, which is permitted in a C-2 zone under the Woonsocket zoning ordinance.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

Justice Lynch Prata did not participate.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | City of Woonsocket v. RISE Prep Mayoral Academy et al. |
| **Case Number** | No. 2019-99-Appeal.<br>(PC 18-6236) |
| **Date Opinion Filed** | May 26, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Nicholas Gorham, Esq. |
| | For Defendant:<br><br>Jules D'Allesandro, Esq.<br>Stephen Izzi, Esq.. |